

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-10-00315-CR**

JEFFREY WILLARD SPRAYBERRY                                     APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury convicted Appellant Jeffrey Willard Sprayberry of the Class B misdemeanor offense of graffiti. In three points, Appellant asserts that the graffiti statute is unconstitutional as applied to him, the evidence is insufficient to support his conviction, and the trial court erred by failing to serve him with a copy of either the complaint or the information. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Appellant pleaded not guilty to charges that he intentionally or knowingly "ma[d]e markings" by spray painting with aerosol paint the word "crook" on a sign owned by Larry Marrs without his effective consent, causing a loss of less than $500. At trial, the State presented evidence that in the weeks before the offense, Marrs and James Blyn placed political signs around the city that were subsequently defaced with spray paint.[2] Blyn testified that in an attempt to catch the culprit, he, his friend Josh Thatcher, and Marrs conducted a stakeout. On May 6, 2009, Marrs and Blyn placed new signs out in the morning and went back out at approximately 10:30 that evening to monitor the signs. Blyn and Thatcher parked in a residential neighborhood near some of the signs. At approximately 1:30 a.m., a tall, heavyset individual wearing a backpack walked by, and he fit the description Blyn and Thatcher had received from someone who had witnessed earlier vandalism of some of the signs. Both Blyn and Thatcher described the individual (later identified as Appellant) as wearing blue jean shorts, a blue T-shirt, white socks, and dark-colored tennis shoes. After Appellant had gone a block or so, Blyn exited the car and followed him with his binoculars. At one point, Blyn saw Appellant put down his bag, rifle through it, pull something out and set it on the ground, put the backpack back on, grab the object on the ground, and continue on his path. Blyn then lost sight of Appellant.

---

[2]Marrs was seeking re-election to the Richland Hills City Council, and Blyn was a first-time candidate.

2

A short time later, Appellant walked back in Blyn's direction, and Blyn hid in the bushes and called the police.

In addition to corroborating much of Blyn's testimony, Josh Thatcher testified that he also exited the car after Appellant first walked by. Thatcher took pictures of Appellant standing across the street from some political signs and rifling through his backpack, and he saw Appellant pull from the backpack what looked like a Coke can but could have been a spray paint can. Thatcher then saw Appellant get "really close to" and kneel down in front of a sign placed in a residential yard. As Thatcher moved toward Appellant, Appellant suddenly turned and walked in Thatcher's direction. The two men exchanged greetings, and when Appellant disappeared behind him, Thatcher ran to the sign. The word "crook" was written in dripping spray paint across one of Marrs's signs.[3] Thatcher got paint on his knuckle when he ran it across the sign.

Richland Hills Police Sergeant Robert Dostie and Officer Zachary Gibson responded to a dispatch regarding the instant offense. Sergeant Dostie found Appellant (who matched the description given by the 911 caller) walking in the area. When Sergeant Dostie stopped Appellant and asked if he had paint in his bag, Appellant invoked his Fourth Amendment right to privacy. Sergeant Dostie testified that Appellant had a video camera strapped around his neck and that he

_____

[3]The State introduced the sign and pictures of the front of the sign in evidence. The sign—as depicted in the photographs in the reporter's record—states in printed lettering, "Re-elect Larry Marrs, Richland Hills, Texas, City Council, Place 5," with the word "crook" spray painted on top of it.

3

announced he was going to turn it on.[4]  Thereafter, Blyn, Thatcher, and Marrs approached, and Blyn and Thatcher identified Appellant as the person they had seen earlier.  Sergeant Dostie subsequently ordered Officer Gibson to arrest Appellant, and Appellant refused to place his hands behind his back and became "passive resistive."[5]  When Officer Gibson "brought [Appellant] around to try to put him down on the ground," Sergeant Dostie saw a can of red spray paint sticking out of one of the backpack's pockets.  Sergeant Dostie did not see any paint on Appellant's hands, however.[6]  Sergeant Dostie testified that he spoke with his commander over the phone and then decided to arrest Appellant.

Officer Gibson testified that before he arrested Appellant, Appellant asked why the officers were there.  When Officer Gibson responded that a sign had been spray painted, Appellant stated he did not know it was against the law to spray paint a political sign.  According to Officer Gibson, when Sergeant Dostie told Appellant they were arresting him for criminal mischief, Appellant stated he could not be arrested because his actions constituted a political statement.

---

[4]Investigator Jonathan Robinson testified that he obtained a search warrant for Appellant's video camera, which the State published to the jury.

[5]On cross-examination, defense counsel suggested that Appellant was simply trying to protect his video camera, but Sergeant Dostie testified, "I don't know if he was protecting his camera.  I think he was trying to keep his arm from going behind his back to be handcuffed."

[6]Sergeant Dostie testified that a video camera on his patrol unit captured Appellant's arrest and that it fairly and accurately represented what occurred, although it contained no audio.  The State published the video to the jury.

4

Appellant then asked, "Isn't [criminal mischief] only a ticket?"[7] After arresting Appellant and transporting him to the jail, Officer Gibson conducted an inventory search of Appellant's backpack and found one can of white and one can of black spray paint.

Marrs testified that on May 6, 2009, he replaced several defaced political signs with new signs in various areas of the city and that he placed the sign in question in a residential yard with the owner's permission. Marrs testified that the sign in question cost approximately $3.77 and that its defacement caused him a pecuniary loss of $500 or less. Marrs testified that, while he wanted whoever was defacing his signs to be arrested, he did not tell the officers to arrest Appellant.

During the trial, Appellant suggested that Marrs pressured the police into arresting him because he was "investigating" some of the things Marrs was doing in his official capacity and because the city manager and the city council set the budget for the police department. In Appellant's case in chief, Officer Dyrel Collins testified that he classified an earlier, different instance of vandalism to a political sign (as reported by a Richland Hills resident) as "noncriminal."

The trial court's jury charge instructed the jury to determine, in turn, whether Appellant was guilty of the Class B misdemeanor offense of graffiti, the

---

[7]Officer Gibson explained on cross-examination that an individual can be arrested or given a citation for a Class C misdemeanor. See Tex. Code Crim. Proc. Ann. art. 14.06 (West Supp. 2011).

5

Class C misdemeanor offense of criminal mischief, or not guilty. *See* Tex. Penal Code Ann. § 28.03, 28.08 (West 2011). The jury found Appellant guilty of graffiti with pecuniary loss of less than $500. The trial court assessed punishment at 120 days' confinement in the Tarrant County jail and $1000 fine, but suspended the imposition of the sentence and placed Appellant on community supervision for eighteen months. As conditions of community supervision, the trial court ordered Appellant to perform twenty-four hours of community service and to serve seven days in jail.

### III. Constitutionality of the Graffiti Statute

In his first point, Appellant asserts that the evidence is insufficient to convict him of graffiti because his conduct consisted of protected free speech under the Texas and United States constitutions. The State responds that Appellant raises a First Amendment complaint for the first time on appeal and that "he appears to make an 'as applied' claim—*i.e.*, the graffiti statute is unconstitutional as applied to him (presumably because he scrawled a 'political' message)."[8] The State asserts that because Appellant did not object at trial that his First Amendment rights were violated by his prosecution under the graffiti

---

[8]There are two types of challenges to the constitutionality of a statute: as applied or facial. *See Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring) ("A facial challenge is based solely upon the face of the penal statute and the charging instrument, while an applied challenge depends upon the evidence adduced at a trial or hearing.").

6

statute, he failed to preserve error. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995).

A challenge to the sufficiency of the evidence need not be raised in the trial court to be preserved for appellate review. *Moff v. State*, 131 S.W.3d 485, 488–89 (Tex. Crim. App. 2004); *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). An "as applied" challenge to the constitutionality of a statute, however, cannot be raised for the first time on appeal. *Curry*, 910 S.W.2d at 496; *see Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008) (noting the "well-established requirement that appellant must preserve an 'as applied' constitutional challenge by raising it at trial"); *Ibenyenwa v. State*, No. 02-10-00142-CR, 2012 WL 955401, at *1–2 (Tex. App.—Fort Worth Mar. 22, 2012, no pet. h.) (op. on reh'g).

Although Appellant's stated point is that "the evidence is insufficient to convict," he argues that "if what [he] did was protected speech then it cannot be a crime." *See Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976).[9] He advises that the Texas and United States constitutions guarantee the right of free speech, and he contends that the message he "allegedly spray painted on [Marrs's] sign" constitutes protected First Amendment speech. We agree with the State that

---

[9]In *Buckley*, the United States Supreme Court considered constitutional challenges to various provisions of the Federal Election Campaign Act of 1971. *See* 424 U.S. at 39, 96 S. Ct. at 644.

7

Appellant challenges the constitutionality of the graffiti statute as applied to him.[10] Because Appellant did not raise his challenge in the trial court, we hold that he has forfeited his claim for review. We therefore overrule his first point.

### IV. Sufficiency of the Evidence

In his second point, Appellant asserts that the trial court reversibly erred in accepting the jury's guilty verdict as to the graffiti offense because if he is guilty at all, he is guilty only of the lesser included offense of criminal mischief.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), *cert. denied*, 80 U.S.L.W. 3462 (U.S. Mar. 19, 2012) (No. 11-944). We defer to the jury's determinations of credibility and may not substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v.*

---

[10]While Appellant contends that graffiti "by its very nature conveys, literally and figuratively, expression which is speech," he also notes that "not all speech is protected." In arguing that his actions were protected, he relies on the facts in his case; specifically, that "instead of one political thought being expressed on a political sign, i.e.: 'elect me'; two were expressed, i.e.: this candidate is a 'crook'."

*State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The trial court's charge instructed the jury to find Appellant guilty of the offense of graffiti with pecuniary loss of less than $500 if it found beyond a reasonable doubt that he

> did intentionally or knowingly make markings, to-wit: spray painted the word "crook" with aerosol paint on the tangible property, to-wit: a sign of another, namely, Larry Marrs, without the effective consent of Larry Marrs, the owner of the tangible property, and said markings caused a pecuniary loss of less than $500 to the said owner . . . .

*See* Act of June 9, 1997, 75th Leg., R.S., ch. 593, § 1, 1997 Tex. Gen. Laws 2072, *amended by* Act of June 18, 1999, 76th Leg., R.S., ch. 695, § 1, 1999 Tex. Gen. Laws 3297, 3297–98, *amended by* Act of June 19, 2009, 81st Leg., R.S., ch. 639, § 4, 2009 Tex. Gen. Laws 1435, 1435–36 (effective Sept. 1, 2009, the legislature removed the "aerosol" qualifier from the types of paint necessary to commit an offense) (current version at Tex. Penal Code Ann. § 28.08 (West Supp. 2011)).[11]

Appellant alleges that no one saw him spray paint any signs. He explains that his comments at the scene are the only evidence connecting him to this

---

[11]At the time of the instant offense, a person committed the offense of graffiti if he (1) intentionally or knowingly made markings (2) on the tangible property of another (3) without the effective consent of the owner (4) with aerosol paint, an indelible marker, or an etching or engraving device. *Id.*

crime and that he made it clear to the officers that if he had committed any crime it was criminal mischief. Appellant also asserts that the State failed to prove that Marrs was the actual owner of the sign because the sign "proclaims that it is owned by the campaign to elect Larry Marrs."[12] He also asserts that "although the 'elect me' message was diminished[,] it[] was not destroyed by the further political message of 'Crook' added to it" and therefore the value of the sign was not diminished.

Viewed in the light most favorable to the verdict, the evidence demonstrated that Appellant was the only person walking in the proximity of Marrs's reelection sign at approximately 1:30 in the morning, that Appellant had a can of red aerosol spray paint in his possession, and that the reelection sign had the word "crook" scrawled across it in dripping wet red paint seconds after Appellant had been seen kneeling down in front of the sign. Marrs testified that his reelection sign cost approximately $3.77 and that he placed it in a residential yard (with permission) the day before the offense. Marrs further testified that the vandalism to his sign caused him pecuniary loss because he was not able to use it again. Finally, Appellant stated to Officer Gibson that he did not know it was against the law to spray paint a political sign. The trial court's charge instructed the jury that "pecuniary loss" means the cost of repairing or restoring the

---

[12]Appellant cites no evidence or record reference in support of this statement. From what we can see in the photographs of Marrs's sign, the front of the sign (at the bottom in small print) appears to state, "Political Advertisement Paid for by Larry Marrs."

10

damaged property within a reasonable time after damage occurred"; that "owner" means "a person who has title to the property or possession of the property"; and "possession" means actual care, custody, control or management of the property. The jury could have reasonably found that Appellant defaced the sign, that Marrs was the owner of the sign, and that Marrs suffered a pecuniary loss of less than $500.

Appellant argues that because graffiti and criminal mischief have the same or similar elements, he should have been convicted of Class C criminal mischief, if at all.[13] Although the facts of the case differ from this one, we find the following language from the court of criminal appeals instructive:

> The task in conducting a sufficiency review is not to determine which offense the appellant *should* or *could* have been charged with; it is to determine whether a rational fact finder could have found beyond a reasonable doubt that the defendant was guilty of the elements of the offense with which she was actually charged. Our criminal laws are numerous, and some of them are quite broad. It is not infrequently the case that an act that violates one penal statute may violate another statute as well. When statutory provisions

---

[13]The primary difference between the graffiti and criminal mischief statutes (as applicable in this case) is that the graffiti statute required the markings to be made with aerosol paint. *Compare* Tex. Penal Code Ann. § 28.03(a)(3) (criminal mischief), *with* Act of June 9, 1997, 75th Leg., R.S., ch. 593, § 1, 1997 Tex. Gen. Laws 2072, *amended by* Act of June 18, 1999, 76th Leg., R.S., ch. 695, § 1, 1999 Tex. Gen. Laws 3297, 3297–98, *amended by* Act of June 19, 2009, 81st Leg., R.S., ch. 639, § 4, 2009 Tex. Gen. Laws 1435, 1435–36.

Sergeant Dostie testified that the word "crook" on Marrs's sign was spray painted on with aerosol paint from a spray can. Additionally, while the Class B graffiti pecuniary loss is "less than $500" and the Class C criminal mischief pecuniary loss is "less than $50," neither has a minimum amount that must be satisfied.

overlap in this way, there is no inherent reason to infer that the Legislature intended them to be mutually exclusive. A legislature may decide that overlap is in some ways desirable; it allows prosecutors the discretion to charge the offense that they believe is most descriptive of a particular action, or that has the most appropriate penalty range for a particular action.

*Avery v. State*, 359 S.W.3d 230, 239 (Tex. Crim. App. 2012) (citations omitted).

Because we hold that the jury could have found beyond a reasonable doubt that Appellant committed the charged offense, i.e. graffiti, Appellant's argument that he is guilty only of criminal mischief is without merit. We overrule Appellant's second point.

## V. Service of a Copy of the Information

In his third point, Appellant asserts that the trial court reversibly erred by proceeding to trial "without having personally served a copy of the charge on [him]." He contends that the due course clause of the Texas constitution[14] and the due process clause of the 14th amendment of the United States Constitution require that he be given "notice of the charge against him."[15] *See* U.S. Const. amends. V & XIV; Tex. Const. art. 1, § 10. In addition, he asserts that because he was not personally served with a copy of the complaint and information, the

---

[14]Article 1, section 10 of the Texas constitution provides that "[i]n all criminal prosecutions the accused . . . shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof." Tex. Const. art. I, § 10; *see* Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005) (stating same).

[15]Appellant does not cite to the Sixth Amendment, but it provides in part that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and course of the accusation . . . ." U.S. Const. amend. VI.

trial court erred by proceeding with the trial because (1) article 26.01 required a pretrial arraignment,[16] and article 26.03 dictates there can be no arraignment until two full days after the service of the charging instrument;[17] and (2) article 27.11 allows Appellant ten days after service of the charging instrument to prepare for trial.[18]

The State responds that the law does not require that Appellant be served with a copy of the information charging him with a misdemeanor offense. *See* Tex. Code Crim. Proc. Ann. art. 25.04 (West 2009) ("In misdemeanors, it shall not be necessary before trial to furnish the accused with a copy of the indictment or information; but he or his counsel may demand a copy, which shall be given as early as possible.").[19] The State contends additionally that Appellant forfeited

---

[16]Article 26.01 provides, "In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment." Tex. Code Crim. Proc. Ann. art. 26.01 (West 2009).

[17]Article 26.03 provides, "No arraignment shall take place until the expiration of at least two entire days after the day on which a copy of the indictment was served on the defendant, unless the right to such copy or to such delay be waived, or unless the defendant is on bail." *Id*. art. 26.03 (West 2009).

[18]Article 27.11 provides, "In all cases the defendant shall be allowed ten entire days, exclusive of all fractions of a day after his arrest, and during the term of the court, to file written pleadings." *Id*. art. 27.11 (West 2006). Article 27.12 provides, "In cases where the defendant is entitled to be served with a copy of the indictment, he shall be allowed the ten days time mentioned in the preceding Article to file written pleadings after such service." *Id*. art. 27.12 (West 2006).

[19]*See Golden v. State*, 92 Tex. Crim. 553, 554, 244 S.W. 816, 817 (1922) ("The enactment of [now article 25.04] was doubtless to enforce the provision of the Bill of Rights wherein it is said that one accused of crime 'shall have the right

any error because he did not request extra time before trial. *See Gallegos v. State*, 425 S.W.2d 648, 650 (Tex. Crim. App. 1968).

Our rules of appellate procedure require, as a prerequisite to presenting a complaint for appellate review, that the record show that the complaint is preserved, i.e., that the complaining party made a timely request, objection, or motion in the trial court that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, and that the trial court ruled on the request, objection, or motion, either expressly or implicitly. *See* Tex. R. App. 33.1; *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). The requirement of preservation of error generally applies to constitutional errors. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (stating that "almost all error—even constitutional error—may be forfeited if the appellant failed to object"), *cert. denied*, 555 U.S. 1105 (2009); *see also Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) ("[N]umerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purpose of appellate review unless properly

to demand the nature and cause of the accusation against him, and to have a copy thereof.' Const. art. 1, § 10.").

Notably, in a felony case, an accused is to be served by the sheriff with a certified copy of the indictment if the accused is in custody "or as soon as he may be arrested," and if the accused is on bail when the indictment is presented, the defendant need not be served; however, upon request, the clerk is to deliver a copy of it to the defendant or his counsel. Tex. Code Crim. Proc. Ann. arts. 25.01, 25.03 (West 2009).

preserved."). But rule 33.1 does not apply to rights that are waivable only[20] or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal.[21] *See State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).

Appellant does not specifically address the preservation issue,[22] although he notes that "[t]he record does not reflect a waiver of the right to be served with a copy of the complaint or the information by either, or both, the Appellant and his counsel." We have found no authority to support an argument that the trial court disregarded a systemic or absolute requirement or that the trial court denied Appellant a waivable-only right. Thus, we hold that rule 33.1 applies to Appellant's complaint.

---

[20]"Waivable only" rights are litigants' rights that must be implemented by the system unless expressly waived. *Anderson*, 301 S.W.3d at 280. For instance, the right to the assistance of counsel and the right to trial by jury are "waivable only" rights. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002).

[21]Systemic or absolute requirements are laws that a trial court has a duty to follow even if the parties wish otherwise. *Mendez*, 138 S.W.3d at 340; *see Anderson*, 301 S.W.3d at 279. Systemic requirements include jurisdiction of the person or subject matter, a constitutional requirement that a district court conduct its proceedings at the county seat, and a constitutional prohibition against ex post facto laws. *Saldano*, 70 S.W.3d at 888–89.

[22]Appellant asserts instead that "the fact that the end result was deprivation of due course and due process of law is not only 'structural' but 'Constitutional' error which cannot be harmless beyond a reasonable doubt. TRAP, Rule 44.2."

Notably, Appellant does not assert that he demanded but was not provided a copy of the complaint or information in violation of article 25.04 and the constitutional provisions. Indeed, our review of the record reveals that Appellant lodged no objections to the lack of service, he did not demand a copy of the information, and he did not ask for extra time to prepare for trial.

A sister court has held that because the appellant did not complain in the trial court that his state or federal constitutional rights were violated by the State's failure to serve him with copies of his indictments, he forfeited any error premised on those grounds. *See Alexander v. State*, 137 S.W.3d 127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Moreover, two sister courts have held that article 26.03 claims are forfeited without timely objections. *See Cordero v. State*, No. 07-00-00237-CR, 2003 WL 1698889, at *6–7 (Tex. App.—Amarillo Mar. 31, 2003, no pet.) (mem. op., not designated for publication) (holding that appellant failed to preserve article 26.03 error because he did not timely object to insufficient time between indictment and arraignment); *Cardona Cruz v. State*, Nos. 05-00-00541-CR, 05-00-00542-CR, 2001 WL 1069219, at *2 (Tex. App.— Dallas Sept. 14, 2001, pet. ref'd) (not designated for publication) (holding that appellant did not preserve his article 26.03 claim because he did not object at trial to a lack of time between service of the indictment and arraignment). Similarly, the court of criminal appeals, this court, and a sister court have held that the additional time to file pleadings allowed under articles 27.11 and 27.12 must be properly requested and refused in order show reversible error. *See*

*Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983); *Trevino v. State*, 900 S.W.2d 815, 817 (Tex. App.—Corpus Christi 1995, no pet.); *Young v. State*, 752 S.W.2d 235, 237 (Tex. App.—Fort Worth 1988), *aff'd*, 796 S.W.2d 195 (Tex. Crim. App. 1990). Because Appellant forfeited his right to raise his complaints on appeal, we overrule his third point.

## VI. Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 26, 2012