**Affirmed and Memorandum Opinion filed June 27, 2024**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00824-CR

---

## AARON LAMAR LIVINGSTON AKA AHRON-AZIEL LIVINGSTON: BEY, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 506th District Court
Waller County, Texas
Trial Court Cause No. 18-08-16527**

---

### MEMORANDUM OPINION

Appellant Aaron Lamar Livingston a/k/a Ahron-Aziel Livingston: Bey was charged with two crimes, forgery and the fraudulent securing of a document by execution. *See* Tex. Penal Code §§ 32.21; 32.46. Both charges went to trial before the same jury. Appellant was convicted of both charges. In this appeal, appellant challenges his forgery conviction. *Id.* at § 32.21. Because we determine that the trial court's exclusion of appellant's forensic document examiner expert witness

was harmless, we overrule appellant's single issue on appeal and affirm the trial court's judgment of conviction.

## BACKGROUND

Appellant appeared at the Waller County Clerk's Office where he was helped by Deputy Clerk Marlene Arranaga. Arranaga was familiar with appellant as a result of prior interactions in the course of her duties as a deputy clerk. According to Arranaga, appellant had previously filed only assumed name documents for doing business in Waller County. Appellant gave Arranaga a document purporting to be a general warranty deed. The General Warranty Deed appellant presented appeared to transfer a real property from Paul and Evonne Wilburn to Canaan-Ahron-Azriel: Bey, an alias appellant was using at the time. Since the document appellant presented complied with all filing requirements, including notarization, Arranaga accepted the document and filed it in the Waller County Property Records.

Another deputy clerk, Donna Jackson, was also familiar with appellant as a result of his prior filing of numerous, different, assumed name notices. Jackson described appellant's filings as irregular because individuals or companies would normally use a different name from their own name as the name they were doing business as. According to Jackson, appellant's notices always had a name for the registrant and the same name for the assumed name.

Jackson and other deputy clerks thought it was surprising that appellant would file a General Warranty Deed. Jackson explained that she had worked in the Waller County Clerk's office for four years at the time appellant filed the General Warranty Deed and she was not aware that appellant had ever previously filed a deed during that time period. Suspicious, Jackson compared the Wilburns' signatures on the General Warranty Deed filed by appellant with the Wilburns'

2

signatures on the deed already on file for the same real property. Jackson believed the signatures on the documents did not match. Jackson instead thought the Wilburns' signatures on the General Warranty Deed filed by appellant looked more like the signatures on the assumed name notices appellant had previously filed. Based on her suspicions, Jackson brought the General Warranty Deed to the attention of the County Clerk, Debbie Hollan. After reviewing the documents, Hollan agreed the signatures did not match and contacted law enforcement.

Appellant was eventually charged with two first-degree felonies: Forgery of a Financial Instrument and Securing the Execution of a Document by Deception. *See* Tex. Penal Code §§ 32.21; 32.46. After being admonished by the trial court, appellant opted to represent himself. The trial court appointed standby counsel.

Walter Anderson, Jr., a former notary, testified first during appellant's trial. Anderson testified that he was a longtime acquaintance of appellant having attended school with him. Anderson testified that appellant asked him to notarize a document. According to Anderson, appellant did not volunteer the nature of the document he wanted notarized, nor did Anderson ask. Before notarizing the document, Anderson asked appellant only if appellant had read and understood it. Anderson then notarized the document based on appellant's representation that he had and did. Anderson testified he did not see a deed that day and he did not know at the time he notarized the document that it was a deed. Anderson testified that if he had known it was a deed, he would not have notarized it. Anderson further testified that, when he notarized the document, appellant's name was on the page, not Paul and Evonne Wilburn's. Regardless, Anderson's "stamp and signature ended up on the deed" appellant filed in the Waller County Property Records.

At the time of appellant's trial, Anderson was no longer a notary because of his involvement in this episode. Anderson testified that he had to surrender his

notary license and also had to pay $18,000 restitution to Paul Wilburn. Anderson was also placed on probation. Testifying truthfully during appellant's trial was a requirement of Anderson's probation.

Beverly Filer, a realtor, also testified during appellant's trial. Filer testified the Wilburns hired her to sell their five-acre tract in Waller County. Filer listed the property at $550,000 and it eventually sold at close to that amount. The appraisal district appraised the property's value at $401,890.

Filer indicated the Wilburns had never discussed any earlier attempt to sell or otherwise transfer the property to appellant. Additionally, Filer had no role in the filing of the General Warranty Deed at issue in the trial. According to Filer, the Wilburns first learned about the General Warranty Deed on their property once there was a contract on the property and the ensuing title search discovered it. The Wilburns ultimately had to file a lawsuit and obtain a judgment to clear the title. Filer explained it cost the Wilburns thousands of dollars and took at least six months to clear the title.

After the State finished its case-in-chief, appellant sought to introduce testimony from three witnesses. Two, Sherman Waller and Lameikia Livingston, were proposed fact witnesses while the third, John Weldon, was a forensic document examiner. Appellant offered Weldon as an expert witness and Weldon had prepared an expert report on his opinions.

The State lodged several objections to Weldon testifying. The State first objected that Weldon should not be allowed to testify because he was accredited through a private board and not by the Texas Forensic Science Commission. In support of this contention, the State cited Section 651.203(b) of Title 37 of the Texas Administrative Code which, according to the State, "lays out those disciplines that are required to be licensed by the commission." The State next

4

objected to Weldon testifying on the basis of Rules 702 and 703 of the Texas Rules of Evidence. According to the State, Weldon's analysis was conjectural because he had incomplete data and as a result, there was a gap between Weldon's data and his analysis and ultimate conclusion. The State argued that the gap was the result of Weldon considering only appellant writing his own name and never comparing it with appellant "attempting to sign Wilburn's name." For the same reasons, the State objected that Weldon's proposed testimony was not relevant. Finally, the State objected that Weldon was not qualified.

At this point, the trial court had appellant call Weldon to the witness stand. After Weldon offered testimony only on the accreditation subject, the trial court made its ruling. It stated "as I look at the indictment and the manner and means that are included in [the forgery case], stating in this to - - with intent to defraud or harm another, alter or make or complete or execute or authenticate a writing so that it purported to be the act of Paul Wilburn, Jr. When I look at that, when I reflect on the testimony of prior witnesses, that while I certainly would not ever include what Mr. Weldon does as junk science, I don't find it to be relevant to this case. And, therefore, Mr. Weldon's testimony will not be provided in this case." Weldon's report was admitted into the record as an offer of proof as a summary of what Weldon's testimony would have been had he been permitted to testify during appellant's trial. In his report, Weldon opined that nothing in the Wilburns' signatures on the General Warranty Deed filed by appellant "can be matched with anything found in the known exemplars of" appellant.

At the conclusion of the evidence, the jury found appellant guilty of both charges. The trial proceeded directly to the punishment phase, where, after evidence and argument, the trial court assessed appellant's sentence at 35 years confinement on each charge to be served concurrently.

5

In a single issue on appeal appellant argues that the trial court abused its discretion when it excluded appellant's expert witness from testifying.

## I.  Standard of Review and Applicable Law

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

Admission of expert testimony is governed by Texas Rule of Evidence 702. *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000). Rule 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. The proponent of expert testimony must show by clear and convincing evidence that the proposed expert testimony is sufficiently relevant and reliable to assist the jury in reaching accurate results. *Tillman*, 354 S.W.3d at 435.

When ruling on the admissibility of Weldon's testimony, the trial court stated, it "would not ever include what Mr. Weldon does as junk science, [but] I don't find it to be relevant." Only relevance, therefore, is at issue in this appeal.

Only relevant evidence is admissible. Tex. R. Evid. 402. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining

6

the action. Tex. R. Evid. 401. Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

Error in the admission of evidence normally constitutes non-constitutional error. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Plouff v. State*, 192 S.W.3d 213, 222 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard non-constitutional error that does not affect a defendant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Plouff*, 192 S.W.3d at 222. A criminal conviction should not be overturned for non-constitutional error if the court, after examining the entire record, has "fair assurance that the error did not influence the jury, or had but a slight effect." *Morales*, 32 S.W.3d at 867. To determine whether the error adversely affected the jury's decision, the appellate court should consider the entire record and factors such as the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and any overwhelming evidence of guilt. *Motilla v. State*, 78 S.W.3d 352, 355–57 (Tex. Crim. App. 2002); *Morales*, 32 S.W.3d at 867.

The improper exclusion of evidence may raise a constitutional violation if the excluded evidence forms such a vital portion of the case that exclusion effectively precluded the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). In that situation, the standard found in Rule 44.2(a) applies. *Simpson v. State*, 119 S.W.3d 262, 269, n.5 (Tex. Crim. App. 2003). Under that standard, we review the entire record and must reverse the

judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *Simpson*, 119 S.W3d at 269, n.5.

**II.    The trial court's exclusion of appellant's expert witness was harmless.**

Assuming without deciding that the trial court erred when it excluded Weldon's proposed expert testimony because it was not relevant, we must determine whether the exclusion was harmful. Tex. R. App. P. 44.2. Appellant's entire harm argument focuses on his contention that he did not sign the Wilburns' names on the General Warranty Deed that he filed in the Waller County Property Records. In appellant's view, he was harmed because Weldon would have opined that nothing in the Wilburns' signatures on the General Warranty Deed filed by appellant could "be matched with anything found in the known exemplars of" appellant's writing.

In Cause No. 18-08-16527 appellant was charged with forgery. The elements of forgery as alleged in the indictment are that (1) appellant, (2) acting with intent to harm or defraud, (3) altered, made, completed, executed, or authenticated, (4) a writing purporting to be the act of Paul Wilburn, Jr., who did not authorize the act. The Penal Code defines "forgery" to include altering, making, completing, executing, or authenticating "any writing" purporting to be the act of another who did not authorize the act. *See* Tex. Penal Code § 32.21(a)(1)(A). The State further alleged that "the writing was a General Warranty Deed that displayed [a] signature purporting to be that of Paul Wilburn, Jr. that was not in fact the signature of Paul Wilburn, Jr." Finally, the State alleged appellant engaged in the alleged conduct in an attempt to obtain a residential and real property valued at $300,000 or more. The jury charge tracked the same language. When the State selects the mode of charging a crime, it must prove the case as

8

alleged. *See Avery v. State*, 359 S.W.3d 230, 237 (Tex. Crim. App. 2012). However, when alternative theories of committing a single offense are submitted to the jury disjunctively, it is proper for the jury to convict if the evidence is sufficient under any of the theories submitted. *See Murchison v. State*, 93 S.W.3d 239, 258 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)).

Among the forgery theories the State alleged and submitted to the jury was appellant committed forgery by executing a writing purporting to be that of Paul Wilburn, Jr., and Paul Wilburn, Jr. did not authorize the act. The jury charge defined "execution" as "the carrying out or putting into effect of a plan, order, or course of action or the putting into effect of a legal instrument or order." As the State emphasized during closing argument, the State was not required to prove that appellant was the person who actually wrote Paul Wilburn, Jr.'s name on the General Warranty Deed appellant filed with the Waller County Property Records. Instead, the State had to prove only that appellant knew the General Warranty Deed had not been authorized by Paul Wilburn, Jr. and he filed it anyway with the intent to obtain a property valued at $300,000 or more. *See* Tex. Penal Code § 32.21(a)(1)(A)(i), (b); *Ford v. State*, No. 03-19-00689-CR, 2021 WL 3376932, at *8 (Tex. App.—Austin Aug. 4, 2021, no pet.) (mem. op., not designated for publication) ("Even if he did not concoct the forgery scheme or mark or alter the check himself, he was still guilty of forgery because he gave the check to the teller to cash it, the check was not authorized by the purported drawer, and he knew it was forged. Those actions constitute forgery under the statute.").

Because the jury could have determined that appellant did not sign Paul Wilburn, Jr.'s signature on the General Warranty Deed and still concluded that appellant committed forgery because he knew the General Warranty Deed had not

been authorized by Paul Wilburn, Jr. and he executed a plan to give the unauthorized General Warranty Deed legal effect by filing it in the Waller County Property Records anyway, we hold the exclusion of Weldon's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Celis v. State*, 354 S.W.3d 7, 39 (Tex. App.—Corpus Christi 2011, *affirmed* 416 S.W.3d 419) ("Because the letter excluded from evidence had no probative value on the issue of whether or not appellant was in good standing with the State Bar of Texas, which was necessary for appellant's conduct to be lawful, we have fair assurance that the error, if any, in excluding the letter from evidence either did not influence the jury or had but a slight effect."). For the same reasons, we conclude beyond a reasonable doubt that the exclusion of Weldon's testimony did not contribute to appellant's conviction. *See* Tex. R. App. P. 44.2(a); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (stating that constitutional error does not contribute to a conviction if the verdict "would have been the same absent the error."). We overrule appellant's issue on appeal.

## CONCLUSION

Having overruled appellant's issue on appeal, we affirm the trial court's judgment of conviction on the forgery charge.


/s/     Jerry Zimmerer
         Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.
Do Not Publish — TEX. R. APP. P. 47.2(b).