

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-0864-11

---

### BILLIE JEAN AVERY, Appellant

### v.

### THE STATE OF TEXAS

---

### ON DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### BEE COUNTY

---

Womack, J., delivered the opinion of the unanimous Court.

The appellant was convicted of attempting to obtain a controlled substance "through use of a fraudulent prescription form."[1] The Thirteenth Court of Appeals acquitted the appellant because it found no evidence that she used a fraudulent prescription form.[2] We shall affirm the

---

[1] *See* TEX. HEALTH & SAFETY CODE § 481.129(a)(5)(B).

[2] *Avery v. State*, 341 S.W.3d 490 (Tex. App.–Corpus Christi 2011).

Court of Appeals's judgment, though we disagree with some of the Court's reasoning and interpretation of the record.

## I. Trial

The evidence showed that on January 15, 2009, the appellant complained to her doctor of knee and back pain and received from him a prescription for forty 2.5 milligram Lortab pills. Before she dropped off the prescription at the pharmacy, the appellant attempted to scribble out the "2.5" and make it look like "7.5." The on-duty pharmacist became suspicious and called the office of the appellant's doctor, where a nurse said that the prescription should have been for 2.5 milligram pills. The pharmacist then called store security, who contacted police.

After the State rested, the appellant moved for a directed verdict of acquittal. She argued that, while there was evidence that she committed forgery, which might allow a conviction under Healthy & Safety Code Section 481.129(a)(5)(A), there was no evidence that she used a fraudulent prescription form as alleged in the indictment, which used the statutory manner and means listed in Section 481.129(a)(5)(B):[3]

> The testimony is that the prescription form is not fraudulent. It is the prescription form of the doctor. What the testimony has been is that the prescription, itself, that the doctor wrote on his form was altered. … There's no evidence that [the appellant] committed this fraud by using a fraudulent prescription form ….

> The State responded that by altering an otherwise legitimate prescription, the appellant

---

[3] Health & Safety Code § 481.129 reads, in pertinent parts:

(a) A person commits an offense if the person knowingly:
    (5) possesses, obtains, or attempts to possess or obtain a controlled substance or an increased quantity of a controlled substance:
        (A) by misrepresentation, fraud, forgery, deception, or subterfuge; [or]
        (B) through use of a fraudulent prescription form; or
        (C) through use of a fraudulent oral or telephonically communicated prescription ….

had created a fraudulent prescription form. The trial court denied the appellant's motion. The jury found the appellant guilty and assessed her punishment of 25 years' confinement and a $1,500 fine.

## II. Direct Appeal

Before the Thirteenth Court of Appeals, the appellant argued that a "prescription form" consisted of "only two elements: (1) the actual paper a practitioner uses to record a prescription; and (2) that paper's preprinted markings. In order for a prescription form to be fraudulent, one of those elements must be directly affected by a fraudulent act." Because her fraudulent act affected only the prescription information handwritten by the doctor, the prescription form itself was not fraudulent, and she was entitled to an acquittal.

The State countered by arguing that under Health & Safety Code Section 481.075 – which outlines the "Official Prescription Program" that prescribers must follow in order to prescribe Schedule II controlled substances[4] – the elements of an "official prescription form" include the controlled substance prescribed as well as the quantity of that controlled substance.[5] Because the prescriber's written words were part of the "official prescription form," according to the State, when the appellant altered those written words she turned the entire document into a "fraudulent prescription form."

The Court of Appeals's majority accepted neither party's argument in full. It agreed with the State that the prescription form was "essentially" an "official prescription form."[6] Instead of

---

[4] *See* TEX. HEALTH & SAFETY CODE § 481.075.

[5] *Id.*, at (e)(1).

[6] *Avery*, 341 S.W.3d, at 497.

addressing whether the appellant's actions fit the definition of using a "fraudulent prescription form," however, the Court of Appeals saw its job as determining whether the appellant's actions were "more" like the "misrepresentation, fraud, forgery, deception, or subterfuge" barred in Section 481.129(a)(5)(A), or like the "use of a fraudulent prescription form," barred in Section 481.129(a)(5)(B).[7] Because it determined that subsections (A) and (B) were mutually exclusive – *i.e.*, an action might fall under (A) or it might fall under (B), but it could not fall under both – and because it determined that the appellant's actions more closely resembled "forgery" than "use of a fraudulent prescription form," the Court of Appeals vacated the trial court's judgment and entered a verdict of acquittal.

### III. Factual Matters

We granted the State's petition for discretionary review to determine whether the Court of Appeals correctly interpreted the phrase "fraudulent prescription form." Before we can address that matter, however, we need to address several factual matters in the Court of Appeals's opinion.

### A. Lortab

The first sentence of the Court of Appeals's opinion was:

> Appellant, Billie Jean Avery, was charged by indictment with obtaining an increased quantity of a Schedule II controlled substance through the use of a fraudulent prescription form, a second-degree felony.[8]

We do not so read the record. The indictment alleged that the appellant attempted to use a fraudulent prescription form "to obtain a controlled substance, namely, Lortab …" without

---

[7] *Id.*, at 498.

[8] *Id.*, at 491.

specifying which Schedule Lortab is on. The Court of Appeals cited to two cases stating that hydrocodone, one of the ingredients in Lortab, is a Schedule II controlled substance.[9] It also cited to a website that described Lortab as a combination of hydrocodone and acetaminophen.[10]

A different page on that same website, however, states that certain mixtures that include hydrocodone are Schedule III controlled substances.[11] The Schedules published by the Commissioner of Public Health confirm that hydrocodone is a Schedule II controlled substance, but certain mixtures that include hydrocodone are Schedule III controlled substances.[12]

Although the record contains no information regarding the specific hydrocodone mixture contained in the Lortab pills the appellant sought, it does contain the pharmacist's testimony that Lortab was a Schedule III controlled substance. There was no contradictory testimony or arguments by the parties that she was mistaken.

We think that the record must be read to say that the prescription was for a Schedule III controlled substance.

### B. "Official Prescription Form"

That reading of the record means that the Court of Appeals was incorrect to have looked to Health & Safety Code Section 481.075 as a source for determining the composite parts of a

---

[9] *Id.*, at 491 n.1 (citing *Smith v. State*, No. 2-07-125-CR, 2008 WL 2553451, at *1-2, 2008 Tex.App. LEXIS 4779, at **4-5 (Tex. App.–Fort Worth June 26, 2008, pet. ref'd) (mem op., not designated for publication), and *Beaty v. State*, 156 S.W.3d 905, 906 n.2 (Tex. App.–Beaumont 2005, no pet.)).

[10] *Id.* (citing Lortab, http://www.drugs.com/lortab).

[11] Hydrocodone Bitartrate Monograph, http://www.drugs.com/monograph/hydrocodone-bitartrate.html (last visited February 27, 2012).

[12] Drugs and Medical Devices: Controlled Substances Scheduling Page, http://www.dshs.state.tx.us/dmd/control_subst_sched.shtm (last visited February 27, 2012); *see also*, TEX. HEALTH & SAFETY CODE § 481.032 (authorizing Commissioner of Public Health to publish and update controlled substance Schedules).

"prescription form."[13] By its terms, Section 481.075 describes "official prescription forms," which prescribers must use when prescribing a Schedule II controlled substance.[14] The section does not mention prescriptions for Schedule III controlled substances.

The copy of the appellant's prescription contained in the record does not appear to be sequentially numbered, as Section 481.075(b) requires of an "official prescription form." Moreover, "official prescription forms" are printed by the Department of Public Safety,[15] and the appellant directs us to a page on the Department of Public Safety's website that shows samples of "official prescription forms" that are significantly different from the appellant's prescription form.[16] There is nothing in the record or in the statutes to lead us to believe that the appellant used an "official prescription form." Thus Section 481.075 is, at most, of limited utility in analyzing this case.

### C. Subsections of a Statute Need Not Be Mutually Exclusive

In comparing Section 481.129(a)(5)(A) to Section 481.129(a)(5)(B), the Court of Appeals began its analysis by looking at the history of the statute.[17] The Court of Appeals noted that before the section was recodified in 1989, the three subsections that are currently under Section 481.129(a)(5) had all been part of a single subsection. The predecessor statute, Article 4476-15

---

[13] *See Avery*, 341 S.W.3d, at 496 ("We find section 481.075(e) to be applicable because the drug involved in this matter–Lortab–is a Schedule II controlled substance.").

[14] TEX. HEALTH & SAFETY CODE § 481.075(a).

[15] *Id*., at (c).

[16] Texas Prescription Drug Program Forms, http://www.txdps.state.tx.us/RegulatoryServices/prescription_program/prescriptionforms.htm (last visited February 27, 2012).

[17] *Avery*, 341 S.W.3d, at 497.

Section 4.09, was enacted in 1979[18] and amended in 1985.[19] Before the 1989 recodification, it read, in relevant part:

> (a) It is unlawful for any person knowingly or intentionally:
>> (3) to acquire, obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, or through use of a fraudulent prescription form or fraudulent oral or telephonically communicated prescription ….

The 1989 recodification placed the Controlled Substances Act, including former Article 4476-15 in the Health & Safety Code. The fraud sections became part of Section 481.129, which at the time read:

> (a) A person commits an offense if the person knowingly or intentionally:
>> (4) possesses or attempts to possess a controlled substance:
>>> (A) by misrepresentation, fraud, forgery, deception, or subterfuge;
>>> (B) through use of a fraudulent prescription form; or
>>> (C) through use of a fraudulent oral or telephonically communicated prescription ….[20]

Despite the Legislature's specific statement that the 1989 recodification was "a nonsubstantive revision,"[21] the Court of Appeals saw in the 1989 recodification "a significant change." By dividing the long list of manner and means in old Article 4476-15 into three subsections in Section 481.129, the Legislature, according to the Court of Appeals, "clearly intended for each provision to constitute a separate offense, rather than two sides of the same coin." The Court of Appeals believed that the subsections should have completely independent

---

[18] Act of May 2, 1979, 66th Leg., R.S., ch. 90, § 6, 1979 Tex. Gen. Laws 163, 165.

[19] Act of May 25, 1985, 69th Leg., R.S., ch. 227 § 10, 1985 Tex. Gen. Laws 1102, 1123.

[20] Act of June 14, 1989, 71st Leg., R.S., ch. 678 § 1, 1989 Tex. Gen. Laws 2230, 2942.

[21] *Id.*, at 2230. *See Avery*, 341 S.W.3d, at 503 (Perkes, J., dissenting) ("The majority's opinion is premised on a mistaken notion that the 1989 recodification of the controlled-substances fraud statute was a substantive change in the law.").

meanings, to avoid rendering a subsection "superfluous."[22] Therefore, the Court of Appeals saw its task as "determining whether [the appellant's] actions fall within Section 481.129(a)(5)(A) or 481.129(a)(5)(B)."

The task in conducting a sufficiency review is not to determine which offense the appellant *should* or *could* have been charged with; it is to determine whether a rational fact finder could have found beyond a reasonable doubt that the defendant was guilty of the elements of the offense with which she was actually charged.[23] Our criminal laws are numerous, and some of them are quite broad. It is not infrequently the case that an act that violates one penal statute may violate another statute as well. When statutory provisions overlap in this way, there is no inherent reason to infer that the Legislature intended them to be mutually exclusive.[24] A legislature may decide that overlap is in some ways desirable; it allows prosecutors the discretion to charge the offense that they believe is most descriptive of a particular action, or that has the most appropriate penalty range for a particular action.

Section 481.129(a)(5) is an example of overlapping statutory provisions. The language in subsection (A) ("misrepresentation, fraud, forgery, deception, or subterfuge") is broad and would seem to encompass virtually every action that would fall under subsections (B) or (C). The overlapping nature of these terms can be seen in the dictionary definitions used by the Court of Appeals. Its definitions of "fraud" all involved "misrepresentation," its definition of "misrepresentation" involved "an intent to deceive," and its definitions of forgery all involved

---

[22] *Avery*, 341 S.W.3d, at 497 n.9.

[23] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[24] *See, e.g., Gray v. State*, 152 S.W.3d 125, 133 (Tex. Cr. App. 2004) (noting that list of intoxicants in DWI statute was "patently overlapping").

"fraudulently" making a document.[25] To interpret "use of a fraudulent prescription form" or "use of a fraudulent oral or telephonically communicated prescription" in a way that did not overlap with subsection (A)'s "fraud" would require doing great violence to the plain language of the statute.

The fact that terms in these statutory subsections overlap does not render any of the subsections meaningless. While subsection (A) is broad enough to encompass most fraudulent attempts to obtain controlled substances, the other subsections allow the State, if it chooses, to draft a more specific charge that allows the trial court to craft a better and more informative jury instruction, and that provides more notice to the defendant regarding the specific act on which the charge is based. By treating overlapping statutory provisions as mutually exclusive, the Court of Appeals impinged on the State's discretion in determining what charge to bring.

An appellate court's belief that an appellant's actions more closely resemble an uncharged offense than the offense actually charged is not a legitimate basis for an acquittal. Sufficiency of evidence is reviewed by comparing the evidence adduced at trial to the elements of the offense actually charged.

## IV. Sufficiency Review

Our disagreement with the Court of Appeals's reasoning does not mean it reached the wrong result. The fact that subsections of Section 481.129 overlap in some circumstances does not change the State's burden of proving the statutory manner and means that it actually charged.

## A. Standard of Review

On a challenge to the sufficiency of the evidence, a court must determine "whether, after

---

[25] *Avery*, 341 S.W.3d, at 498.

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[26] When a statute lays out alternative manner and means of committing an offense, the manner and means included in the charging instrument becomes an essential element that the State must prove beyond a reasonable doubt.[27] Proof of a different, uncharged, manner and means will not support a conviction for the offense that was charged.[28]

The question for us to determine here is whether there is sufficient evidence of the offense that was charged: that the appellant "use[d] a fraudulent prescription form." In construing a statute, we look first to the statute's literal text, and "we read words and phrases in context and construe them according to the rules of grammar and usage."[29] "[W]e may presume that each word in the statute has a purpose, and that words not defined in the statute are used in their ordinary and common sense."[30]

## B. Prescription and Prescription Form

The "Definitions" section of the Controlled Substances Act defines "prescription" as "an order by a practitioner to a pharmacist for a controlled substance for a particular patient that specifies [certain information about the patient, the prescriber, and the prescribed drug]."[31] There is no specific definition of a "prescription form," but provisions of the Health & Safety Code

---

[26] *Jackson*, 443 U.S., at 319 (emphasis in original).

[27] *See Geick v. State*, 349 S.W.3d 542, 545 (Tex. Cr. App. 2011).

[28] *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Cr. App. 2011).

[29] *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Cr. App. 2008).

[30] *Prudhom v. State*, 333 S.W.3d 590, 594 (Tex. Cr. App. 2011).

[31] TEX. HEALTH & SAFETY CODE § 481.002(41).

provide clues as to its meaning.

As we have said above, Section 481.075 describes the "Official Prescription Program" used for prescribing Schedule II controlled substances and, as such, is not directly applicable to this case under Schedule III. Nonetheless, we can use it as a tool to help us understand other, applicable statutes. Section 481.075(a) states that a prescription for a Schedule II controlled substance should be recorded on an official prescription form. This comports with the common usage of the word "form." Just as tax information should be recorded on a tax form to create a completed tax return, so too prescription information should be recorded on a prescription form to create a completed prescription.[32] The information that is written *on* the form is not the form itself. As Subsection 481.075(e) says, "Each official prescription form or electronic prescription *used to prescribe a Schedule II controlled substance* must contain [certain information]" (emphasis added). This section describes the written information that must be written *on* the form at the time it is used. The written information becomes part of the *completed prescription*, not a part of the form.

In other parts of Section 481.129, it is obvious that the legislature intended that the distinction between a prescription and a prescription form be legally relevant:

> (c) A person commits an offense if the person knowingly or intentionally:
> (1) delivers a prescription or a prescription form for other than a valid medical purpose in the course of professional practice; or
> (2) possesses a prescription for a controlled substance or a prescription form unless the prescription or prescription form is possessed [in certain enumerated circumstances].
> (f) An offense under Subsection (c)(1) is:

---

[32] *Compare* § 481.075(e)(1) (information from a prescriber that must be written on an official prescription form used to prescribe a Schedule II controlled substance) with § 481.002(41) (information required for a prescription, generally).

(1) a felony of the second degree if the defendant delivers:
  (A) a prescription form; or
  (B) a prescription for a controlled substance listed in Schedule II; and
(2) a felony of the third degree if the defendant delivers a prescription for a controlled substance listed in Schedule III, IV, or V.
(g) An offense under Subsection (c)(2) is:
  (1) a state jail felony if the defendant possess:
    (A) a prescription form; or
    (B) a prescription for a controlled substance listed in Schedule II or III; and
  (2) a Class B misdemeanor if the defendant possesses a prescription for a controlled substance listed in Schedule IV or V.

In a scheme in which the illegal possession or delivery of a prescription is punished more or less severely depending on the Schedule of the prescribed controlled substance, the illegal possession or delivery of a prescription form receives the highest level of punishment. This would seem to flow from the prescription form's potential to become a prescription for any type of prescribable controlled substance.

From these statutory inferences, as well as common usage of language, we hold that "prescription form" refers to a pre-printed form designed to have prescription information written on it. Through statutory inference, we also conclude that the Legislature intended for there to be a legal distinction between prescription forms and completed prescriptions.

C. Written Prescription Information Is Not Mentioned in Section 481.129(a)(5)(B)

The State argues that interpreting "use of a fraudulent prescription form" to refer only to situations in which the form is fraudulent, rather than to situations in which the written prescription is fraudulent, will result in a statutory offense with no real-world applications.

The State makes this argument under the mistaken belief that, under our interpretation, Section 481.129(a)(5)(B) will apply only to acts of obtaining (or attempting to obtain) controlled

substances using fraudulent prescription forms that are blank. But there is no reason to so constrict the statute. Subsection (B) applies to situations where an individual knowingly possesses, obtains, or attempts to possess or obtain a controlled substance or an increased quantity of a controlled substance through use of a fraudulent prescription *form*. The writing *on* the form is not an element of that offense.

## D. Application

The State charged the appellant with attempting to obtain a controlled substance "through use of a fraudulent prescription form." It then adduced evidence that the appellant fraudulently altered information that was handwritten on a legitimate prescription form. While this evidence would have supported a conviction had the State charged the appellant using other statutory manner and means that were available, the evidence does not support a conviction for the offense that was actually charged.

## V. Conclusion

We agree with the Court of Appeals judgment, albeit for different reasons. We affirm the Court of Appeals's judgment of acquittal.

Delivered February 29, 2012.
Publish.