FILED IN
COURT OF CRIMINAL APPEALS

April 24, 2015

ABEL ACOSTA, CLERK

PD-1595-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/24/2015 4:10:48 PM
Accepted 4/24/2015 4:24:05 PM
ABEL ACOSTA
CLERK

# Nos. PD-1595-14 and PD-1596-14

---

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**ROGER LIVERMAN AND AARON LIVERMAN**
*Appellants / Respondents*

v.

**THE STATE OF TEXAS**
*Appellee / Petitioner*

---

On State's Petition for Discretionary Review

Court of Appeals of Texas, Second District
Case No. No. 02-13-00176-CR

362nd Judicial District Court, Denton County
Cause No. F-2012-0136-D and F-2012-0137-D

---

**APPELLANT'S BRIEF ON THE MERITS**

---

MATTHEW J. KITA
Texas Bar No. 24050883

P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863 (phone)
(214) 347-7221 (facsimile)
matt@mattkita.com

COUNSEL FOR APPELLANTS

# Identity of Parties and Counsel

**Appellants/Respondents:**     **Roger Liverman and Aaron Liverman**

Appellate Counsel:     Matthew J. Kita
P.O. Box 5119
Dallas, Texas 75208

Trial Counsel:     Lea Ann Breading
121 West Hickory Street, Suite 133
Denton, Texas 76209

Jerry Cobb
P.O. Box 1399
Denton, Texas 76202

**Appellee/Petitioner:**     **The State of Texas**

Appellate Counsel:     Lara Tomlin
Denton County District Attorney's Office
1450 East McKinney Avenue
Denton, Texas 76209

Trial Counsel:     Rick Daniel
Lindsey Sheguit
Denton County District Attorney's Office
1450 East McKinney Avenue
Denton, Texas 76209

# TABLE OF CONTENTS

Identity of Parties and Counsel ..................................................................i

Index of Authorities ...............................................................................iii

Restatement of Facts ............................................................................... 1

Summary of the Argument......................................................................... 4

Argument .............................................................................................. 5

I.   The court of appeals correctly concluded that the State's evidence was legally insufficient to support Appellants' convictions. ................................ 5

   A.   The State offered no evidence to support its burden to prove that the county clerk "executed" Appellants' mechanics-lien affidavits.......... 7

      1.   The county clerk's testimony at trial reflects that she does not "execute" documents, under the plain meaning of the word.... 7

      2.   As a matter of law, a "lien" is not something that a county clerk can "execute." ...........................................................9

   B.   The court of appeals' interpretation is consistent with legislative history..................................................................................... 12

      1.   The Legislature's addition of the word "execute" to section 32.46(a)(1) in 1973 is irrelevant............................................. 12

      2.   Subsections (a)(1) and (a)(2) were passed for entirely different purposes and therefore no "overlap" is permitted.................. 13

   C.   This Court places primary emphasis on the "statutory verb" when determining the criminal act at issue................................................. 18

II.  The State's incorrectly suggests that the court of appeals' opinion has decriminalized the "fraudulent use of liens." ........................................... 22

Conclusion and Prayer ...................................................................... 27

# INDEX OF AUTHORITIES

## CASES

*Avery v. State,*
359 S.W.3d 230 (Tex. Crim. App. 2012)......................................................14, 15

*Azeez v. State,*
248 S.W.3d 182 (Tex. Crim. App. 2008) ..........................................................26

*Byrd v. State,*
336 S.W.3d 242 (Tex. Crim. App. 2011) .......................................................... 21

*Cheney v. State,*
755 S.W.2d 123 (Tex. Crim. App. 1988) ..........................................................25

*Cont'l Radio Co. v. Cont'l Bank & Trust Co.,*
369 S.W.2d 359 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.).............11, 12

*Ex parte Roemer,*
215 S.W.3d 887 (Tex. Crim. App. 2007).........................................................24

*Ex parte Smith,*
185 S.W.3d 887 (Tex. Crim. App.2006)...........................................................26

*First Nat'l Bank in Dallas v. Whirlpool Corp.,*
517 S.W.2d 262 (Tex. 1974) ........................................................................... 12

*Huffman v. State,*
267 S.W.3d 902 (Tex. Crim. App. 2008) .......................................................... 19

*Jefferson v. State,*
189 S.W.3d 305 (Tex. Crim. App. 2006).......................................................... 19

*McLarty v. State,*
302 S.W.2d 420 (Tex. Crim. App. 1957).......................................................... 13

*Mills v. State,*
722 S.W.2d 411 (Tex. Crim. App. 1986) ..........................................................25

*Moore v. Carey Bros. Oil Co.*,
269 S.W. 75 (Tex. 1925) ................................................................. 11

*Ngo v. State.*
175 S.W.3d 738 (Tex. Crim. App. 2005) .................................... 19

*Purdin v. Jenkins*,
337 S.W.2d 418 (Tex. Civ. App.—Dallas 1960, no writ) .................................. 11

*State v. Wiesman*,
269 S.W.3d 769 (Tex. App.—Austin 2008, no pet.) ................................... 20, 21

*Strang v. Pray*,
89 Tex. 525, 35 S.W. 1054 (1896). ................................................ 11, 12

*Tex. Wood Mill Cabinets, Inc. v. Butter*,
117 S.W.3d 98 (Tex. App.—Tyler 2003, no pet.) ............................................. 10

*United States v. Gipson*,
553 F.2d 453 (5th Cir. 1977) ........................................................ 19

**STATUTES**

Tex. Code Crim. Proc. art. 4.05 ....................................................26

Tex. Gov't Code § 311.026 ..........................................................25

Tex. Gov't Code § 311.011 ..........................................................7

Tex. Health & Safety Code § 481.129 ....................................14

Tex. Penal Code § 32.46 ......................................................*passim*

Tex. Penal Code § 32.49 ............................................................23

Tex. Prop. Code § 53.051 ...........................................................9

Tex. Prop. Code § 53.052...........................................................9

Tex. Prop. Code § 53.054..................................................................9

Tex. Prop. Code § 53.056..................................................................9

Tex. Prop. Code § 53.254................................................................10

## Other Authorities

53 Tex. Jur.2d, Statutes § 186 ......................................................25

Black's Law Dictionary (9th ed. 2009)...........................................7

## Constitutional Provisions

U.S. Const. art. I, § 9, cl.3.............................................................24

Tex. Const. art I, § 16...................................................................24

Tex. Const. art. 16, § 37 .............................................................. 11

## RESTATEMENT OF FACTS

This appeal arises out of a business dispute between Appellants Roger and Aaron Liverman and Roger's daughter/Aaron's sister, Complainant Katheryn Hall.[1] In January 2007, Hall and her then-husband purchased a house in Krum, Texas.[2] After purchasing the home, Hall had the house "completely gutted" and began to remodel it.[3]

At the time, Hall owned a ceramic-tile-installation company called K.A.M.P. Tile, Incorporated.[4] In fall 2007, she hired Roger and Aaron to work for her company,[5] and offered to let them live on the property in Krum, Texas.[6] Roger's wife Mary (Hall's mother) initially stayed in a camper-trailer on the property, and then moved into the house after the remodel was completed.[7]

---

[1] The indictment identified Complainant as Katheryn Payne. C.R. 5–7. At trial, Complainant testified that she changed her name to Katheryn Hall. 3 R.R. 25:14–18.

[2] 3 R.R. 29:1–14.

[3] 3 R.R. 29:22–30:10.

[4] 3 R.R. 28:21–24.

[5] 3 R.R. 34:23–35:13.

[6] 3 R.R. 36:3–17.

[7] 3 R.R. 37:21–38:15.

According to Hall's testimony at trial, the remodel was about 65% complete before she hired Roger and Aaron.[8] With regard to the completion of the remodeling, Hall admitted that Roger and Aaron assisted with the installation of the HVAC system,[9] performed tape-and-bed work,[10] painted the kitchen and bathroom,[11] installed French doors and light fixtures,[12] put a roof on the chicken coop,[13] and installed appliances.[14] Although Hall paid Roger and Aaron for their work for K.A.M.P. Tile, she admitted that she did not pay them for any of their above-referenced work on the remodel.[15]

Hall further alleged that Roger eventually asked if he and Aaron could share equally in K.A.M.P. Tile's profits.[16] Believing that Roger and Aaron were "trying to take over my company,"[17] Hall fired both of them (as well as her mother) in June

---

[8] 3 R.R. 49:18–19.

[9] 3 R.R. 51:13–16.

[10] 3 R.R. 54:23–55:3.

[11] 3 R.R. 55:14–16.

[12] 3 R.R. 55:8–14; 57:16–22.

[13] 3 R.R 59:19–60:2.

[14] 3 R.R 69:25–70:24.

[15] 3 R.R. 71:19–22.

[16] 3 R.R. 41:7–9.

[17] 3 R.R. 40:19–20.

2008.[18] The following month, Hall filed an eviction proceeding against Roger and her mother,[19] which forced them out of the newly remodeled home.

After Hall filed her eviction proceeding, Roger and Aaron filed mechanics' liens on the property.[20] In response, Hall filed a civil lawsuit against Roger and Aaron to have the lien removed,[21] and also filed a complaint with the Denton County District Attorney.[22] Hall ultimately prevailed in the civil lawsuit.[23] Shortly thereafter, the State indicted Roger and Aaron for "securing the execution of a document by deception."[24] After a bench trial, the court found Roger and Aaron guilty of the charged offense.[25] Roger was sentenced to ten years in prison (suspended for ten years), fined $5,000, and was ordered to pay $17,500 in restitution as a condition of his community supervision; Aaron was sentenced to two years in prison, suspended for two years.[26]

---

[18] 3 R.R. 41:15–18; 43:10–14.

[19] 3 R.R 45:

[20] 5 R.R. Ex. 1.

[21] 3 R.R. 47:6–8.

[22] 3 R.R. 66:17–20; 67:3–9.

[23] 3 R.R. 96:13–17; 203:16–20.

[24] C.R. 5–7; 3 R.R. 200:1–16.

[25] C.R. 65–68.

[26] C.R. 65–68.

## Summary of the Argument

The court of appeals correctly concluded that the evidence at trial was legally insufficient to convict Appellants of "Securing the Execution of a Document by Deception" under section 32.46(a)(1) of the Texas Penal Code because the State failed to offer any evidence that the Denton County Clerk "signed or executed" a document affecting property. All of the arguments advanced by the State in support of a reversal of that decision fail as a matter of law because:

— The State's arguments are premised on a fundamental misunderstanding of the plain meaning of the verb "to execute," as well as the manner and means by which mechanics' liens are made effective;

— The legislative history reflects that the Legislature never intended to criminalize Appellants' alleged acts in section 32.46(a)(1);

— The State's arguments directly contradict this Court's well-established precedents for statutory construction; and

— Another plainly-applicable statute already criminalizes exactly the same conduct that Appellants are alleged to have committed, and was in effect at the time Appellants were indicted.

Accordingly, this Court should affirm the judgment of the court of appeals, and grant Appellants all other relief in law and equity to which they have shown themselves to be justly entitled.

## ARGUMENT

**I. The court of appeals correctly concluded that the State's evidence was legally insufficient to support Appellants' convictions.**

As noted above, Appellants were indicted for violating section 32.46(a)(1) of the Texas Penal Code. To obtain a conviction, the State was required to prove that Appellants "caused another to sign or execute a document affecting property." In the indictment, the State specifically alleged:

> [APPELLANTS]…on or about the 22nd day of July 2008…did then and there, with intent to harm or defraud Katheryn Payne, by deception, to wit: misrepresent that [Appellants] performed construction, remodeling and landscaping work to property owned by Katheryn Payne when, in fact, defendant had not performed such work, cause Cynthia Mitchell to *sign or execute* a document affecting the property or service of Katheryn Payne….[27]

The two-page document at issue, titled "Claim of Lien" was attached to the indictment.[28] A cursory review of this document reveals that Mitchell (the Denton County Clerk)[29] did not "sign" it.[30] Accordingly, this entire appeal ultimately turns on whether Mitchell's actions can be accurately described as "executing" Appellants' affidavit.

---

[27] C.R. 6.

[28] C.R. 7–8.

[29] 3 R.R. 17:25–18:4.

[30] C.R. 7.

Relying primarily on this Court's 1977 decision in *Morter v. State*, the court of appeals examined other language within section 32.46 to determine the exact nature of the conduct that the Legislature intended to criminalize.[31] After noting that subsection (a)(2) of the same statute addressed "causing a public servant to 'file or record' a fraudulent document," the court of appeals concluded:

> In oral arguments and in its brief, the State used the terms "filing and recording" and "sign or execute" interchangeably. The legislature, however, did not. Because the legislature chose to use language differentiating "sign or execute" from "file or record" within the same statue, we hold that the plain meaning of the words "sign or execute" in subsection 32.46(a)(1) does not include the action of a court clerk filing and recording a document. Although the State presented evidence that the county clerk in this case filed and recorded the affidavit in question, it provided no evidence that the county clerk otherwise signed or executed it as contemplated by Texas Penal Code section 32.46(a)(1).[32]

Accordingly, the court of appeals reversed Appellants' convictions, and entered a judgment of acquittal.[33] Because a contrary holding would require this Court to ignore the plain meaning of the statute, practical experience, and legislative intent, and would violate Appellants' constitutional right to due process, Appellants respectfully request this Court to affirm the court of appeals' holding.

---

[31] Slip Op., p. 5.

[32] Slip Op., p. 6.

[33] Slip Op., p. 7.

**A.** **The State offered no evidence to support its burden to prove that the county clerk "executed" Appellants' mechanics-lien affidavits.**

**1.** **The county clerk's testimony at trial reflects that she does not "execute" documents, under the plain meaning of the word.**

Because the Texas Penal Code does not define the word "execute" for purposes of section 32.46(a)(1), the Code Construction Act requires this Court to adopt the word's common usage.[34] Black's Law Dictionary defines "execute" as follows:

> 1. To perform or complete (a contract or duty) <once the contract was fully executed, the parties owed no further contractual duties to each other>. 2. To change (as a legal interest) from one form to another <the shifting use was executed into a valid legal estate>. 3. To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form <each party executed the contract without a signature witness>. …5. To enforce and collect on (a money judgment) < Williams asked the sheriff to execute on the judgment>.[35]

Notably, Mitchell admitted at trial that she did not do *any* of these things. Instead, Mitchell merely testified that she and her staff "file documents that affect property"[36] in the following manner:

> Q.     If somebody wishes to file a mechanic's lien on a certain property, how would they just generally go about doing that?

---

[34] Tex. Gov't Code § 311.011.

[35] Black's Law Dictionary (9th ed. 2009).

[36] 3 R.R. 18:15–20.

A. They would bring in a document, and if the document meets the recording requirements as prescribed by law, then the clerk takes the document, enters a certain amount of information into the computer system, takes payment for that, and records the document.

\* \* \*

Q. If you don't know that a document is blatantly false or fraudulent, what would you do with that document?

A. We would record it.[37]

In other words, Mitchell's actions have no relationship to the ultimate validity of the allegations contained in underlying document; the scope of her obligations was merely to record and index the document that *Appellants* executed for potential third parties who might perform a title search.[38] And although Mitchell agreed with the prosecutor when asked if she and her staff "executed" documents when performing their tasks,[39] for the reasons discussed above, Appellants respectfully submit that Mitchell's *ipse dixit* is insufficient to alter the word's plain meaning. Because the State offered no other evidence to establish that Mitchell "executed" anything, the court of appeals' holding should be affirmed.

---

[37] 3 R.R. 20:6–8.

[38] 3 R.R. 23:16–20 ("Of somebody wanted to sell the property and then a title company or somebody came to look, they would see it and they would find it and it would affect the property").

[39] 3 R.R. 19:5–8; 23:8–12.

**2. As a matter of law, a "lien" is not something that a county clerk can "execute."**

In an attempt to shoehorn the evidence at trial into the language it used in its indictment, the State argues that Mitchell's actions are consistent with a (non-legal) dictionary definition of "execute" because (according to the State) "a statutory lien is only valid and executed once it is filed and recorded."[40] This is false. To support this argument, however, the State directs this Court to section 53.052 of the Texas Property Code,[41] which is curious, given that it stands for *exactly the opposite* proposition:

> The county clerk shall record the affidavit in records kept for that purpose and shall index and cross-index the affidavit in the names of the claimant, the original contractor, and the owner. **Failure of the county clerk to properly record or index a filed affidavit does not invalidate the lien.**[42]

In fact, nothing in the Property Code even remotely suggests that the county clerk plays *any* role in the validity of a statutory lien. Instead, it provides that a lien's validity turns on the compliance of *the person seeking to perfect it*.[43]

---

[40] State's Br., p. 23.

[41] State's Br., pp. 22–23.

[42] Tex. Prop. Code § 53.052 (emphasis added).

[43] Tex. Prop. Code § 53.051. *See also* Tex. Prop. Code §§ 53.054, .056 (After the person seeking perfection of a lien files an affidavit with the county clerk, he or she must also send a copy to the owner of the property and/or original contractor).

- 9 -

The statutory text is consistent with the well-accepted understanding of what a "lien" actually is. Contrary to the State's suggestion, a "lien" is not a tangible document for a clerk to "execute." By definition, it is "a legal right or interest that a creditor has in another's property."[44] Although documents may serve as *evidence* of the claim, they do not constitute the lien itself, and the only reason for recording documents relating to a claim of lien is to provide constructive notice to—and allow enforcement against—potential third-party purchasers of the property.[45] Understandably, therefore, a thorough search of Texas statutory and case law does not reveal a single instance in which the Legislature or any court has ever used the verb "execute" in connection with a county clerk's actions vis-à-vis a claim of lien. Instead, all legal authorities recognize that the property owner and the purported lienholder "execute" the lien, and the duties of the county clerk are relegated to filing and/or recording documents that reflect its execution.[46]

Finally, the provisions of the Penal and Property Code are consistent with the provisions of the Texas Constitution that the State attempts to distinguish in its

---

[44] Black's Law Dictionary (9th Ed. 2009).

[45] *Tex. Wood Mill Cabinets, Inc. v. Butter*, 117 S.W.3d 98, 105 (Tex. App.—Tyler 2003, no pet.).

[46] *See, e.g.*, Tex. Prop. Code § 53.254 ("to fix a lien on a homestead, *the person who is to furnish material or perform labor and the owner must execute* a written contract setting forth the terms of the agreement" and "the county clerk shall *record* the contract in records kept for that purpose").

brief.[47] As the State acknowledges, the right to assert a mechanics' lien is conferred by the Texas Constitution,[48] and for nearly 120 years, Texas courts have held that such a lien is *self-executing*:

> The lien does not depend upon the statute. The Legislature has no power to affix to that lien conditions of forfeiture. The Legislature is commanded by the Constitution simply to provide for the 'speedy and efficient enforcement' of the lien. No record at any time is necessary to give the lien. The filing and recording of the contract or account, as provided by the statute, is not necessary in any case arising between the original contractor and the original owner. The provisions of the statute requiring the claim to be recorded were intended to protect the persons having the liens against subsequent purchasers, mortgagees, and lienholders in good faith without notice, by furnishing constructive notice of the existence of the lien.[49]

This principle is further illustrated by the fact that the agreements that give rise to such liens do not even have to be in writing.[50] For obvious reasons, a county clerk cannot record an oral lien, yet Texas courts have deemed them valid and enforceable for more than half a century.

In sum, Appellants' recording of an affidavit in support of a *claim* of lien with the county clerk is entirely unrelated to its "finality, validity, or enforceability"

---

[47] State's Br., p. 21.

[48] Tex. Const. art. 16, § 37.

[49] *Cont'l Radio Co. v. Cont'l Bank & Trust Co.*, 369 S.W.2d 359, 361 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.) (citing *Moore v. Carey Bros. Oil Co.*, 269 S.W. 75, 77 (Tex. 1925); *Strang v. Pray*, 89 Tex. 525, 528, 35 S.W. 1054, 1056 (1896).

[50] *See, e.g.*, *Purdin v. Jenkins*, 337 S.W.2d 418, 421 (Tex. Civ. App.—Dallas 1960, no writ).

because it did not "change a legal interest from one form to another."[51] As a matter of law therefore, the State failed to prove that the county clerk "executed" a document that affected the Hall's property. For this additional reason, the court of appeals' opinion and judgment should be affirmed.

## B. The court of appeals' interpretation is consistent with legislative history.

The State devotes the majority of its briefing to its argument that "It was the Legislature's intent under section 32.46(a)(1) to criminalize the act of causing a court clerk to file and record a fraudulent lien."[52] In support of this endeavor, it raises five sub-arguments and four sub-sub-arguments, none of which have merit.

## 1. The Legislature's addition of the word "execute" to section 32.46(a)(1) in 1973 is irrelevant.

The State claims that this Court should be particularly impressed by the Legislature's decision to add the word "execute" to the section 32.46(a)(1) when it overhauled the Penal Code in 1973, and replaced former article 1000 with the present version of section 32.46(a)(1).[53] For the reasons discussed above, this addition is irrelevant because, as a matter of law, county clerks do not "execute"

---

[51] *First Nat'l Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262, 267 (Tex. 1974); *Cont'l Radio Co.*, 369 S.W.2d at 361; *Strang,* 89 Tex. at 529, 35 S.W. at 1056.

[52] State's Br., pp. 5–21.

[53] State's Br., pp. 5–9.

liens. Moreover, the State's admission that this former article "most closely resembles" the current law further supports the court of appeals' decision. As this Court noted in its 1957 opinion in *McLarty v. State*, former article 1000 criminalized "the act of intentionally defrauding another by a *false reading*, *false interpretation*; or *misrepresentation of the contents* of (A) any pecuniary obligation or (B) any instrument in writing which would in any manner affect property that would (a) induce anyone to sign such instrument as his act or (b) give assent to it in such manner as would make it his act, if not done under mistake."[54] Even if this Court were willing to consider the text of a statute that has been repealed for over 40 years in its analysis of the proper interpretation of different words, the evidence in the present case would not even support a conviction under the prior version of the statute. This argument fails.

**2.  Subsections (a)(1) and (a)(2) were passed for entirely different purposes and therefore no "overlap" is permitted.**

The State then claims that "any overlap" between the "signed or executed" requirement in section 32.46(a)(1) and the "filed or recorded" requirement in section 32.46(a)(2) is "allowable."[55] To support this argument, the State relies on

---

[54] *McLarty v. State*, 302 S.W.2d 420, 422 (Tex. Crim. App. 1957) (emphasis added).

[55] State's Br., p. 9–14.

this Court's opinion 2012 opinion in *Avery v. State*.[56] There—as here—a defendant appealed a conviction on the basis that the State prosecuted him under the wrong subsection of the Penal Code.[57] Moreover, as in the present case, the statute at issue had been revised during an omnibus recodification.[58] The fundamental difference between this case and *Avery*, however, is that the previous version was functionally identical to the version in effect at the time of the conviction.

In *Avery*, the defendant changed the amount of pills on the prescription that his doctor provided him.[59] The State charged him with violating section 481.129(a)(5)(B) of the Health and Safety Code, which provided:

> (a) A person commits an offense if the person knowingly or intentionally:
>
> > (5) possesses or attempts to possess a controlled substance:
> >
> > > (A) by misrepresentation, fraud, forgery, deception, or subterfuge;
> > >
> > > **(B) through use of a fraudulent prescription form**; or
> > >
> > > (C) through use of a fraudulent oral or telephonically communicated prescription.[60]

---

[56] *Avery v. State*, 359 S.W.3d 230 (Tex. Crim. App. 2012).

[57] *Avery*, 359 S.W.3d at 233–34.

[58] *Avery*, 359 S.W.3d at 235.

[59] *Avery*, 359 S.W.3d at 232.

[60] *Avery*, 359 S.W.3d at 235 (citing Tex. Health & Safety Code § 481.129 (emphasis added)).

On appeal, the defendant contended that he did not use a fraudulent *form*, he merely forged the numbers on a form that already existed.[61] In its analysis, this Court looked to the previous version of the statute to determine what conduct the Legislature intended to criminalize. That version was worded as follows:

> (a) It is unlawful for any person knowingly or intentionally:
>
>> (3) to acquire, obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, or through use of a fraudulent prescription form or fraudulent oral or telephonically communicated prescription....[62]

Noting that the Legislature intended a "nonsubstantive revision" when it recodified this article into the Health and Safety Code, this Court held that "subsection (A) [of the current version] is broad enough to encompass most fraudulent attempts to obtain controlled substances, the other subsections allow the State, if it chooses, to draft a more specific charge that allows the trial court to craft a better and more informative jury instruction, and that provides more notice to the defendant regarding the specific act on which the charge is based."[63]

The same logic does not apply to the statute at issue in this case. Here, section 32.46(a)(1) was *never* designed to criminalize the act of presenting an

---

[61] *Avery*, 359 S.W.3d at 232–33.

[62] *Avery*, 359 S.W.3d at 235 (citing former Article 4476-15 § 4.09).

[63] *Avery*, 359 S.W.3d at 236.

allegedly fraudulent lien to a county clerk for recording and indexing. As discussed above, the State's own legislative-history research reflects that the previous version of the statute prohibited the act of obtaining someone's signature on a document affecting property or pecuniary interest by intentionally misrepresenting its contents.[64] When the statute was recodified, the verb "execute" was substituted for "give assent to," and "by deception" was substituted for "by falsely reading, or falsely interpreting…or by misrepresenting its contents." But none of those changes even remotely suggest that the Legislature intended to criminalize Appellants' alleged actions in this case.

Instead, as the State's brief also makes clear, the Legislature believed that it was necessary to *amend* section 32.46(a) to add subsection (a)(2) "in an effort to criminalize the filing of fraudulent judgments and other documents purporting to create invalid liens against public officials and private citizens."[65] This argument necessarily begs the question: If subsection (a)(1) already covered this practice, why was it necessary to amend the statute to include subsection (a)(2)? The answer is obvious: because the plain language of subsection (a)(1) says nothing about *filing* fraudulent documents.

---

[64] State's Br., pp. 5–9 & Appendix C; *McLarty*, 302 S.W.2d at 422.

[65] State's Br., p. 16 n.6 & Appendix F.

The State, however, answers this question in a particularly puzzling fashion. Although it correctly acknowledges that, "subsection (a)(1) covers *any document* that is executed, in contrast to subsection (a)(2), which covers false documents from false courts that are filed or recorded,"[66] it then makes the following logical leap:

> Documents that fall under section 36.42(a)(2) are always fraudulent and never valid, and therefore it is a crime to file or record them. On the other hand, any person who files a lien, and follows the procedure set forth in chapter 53 of the Texas Property Code, has executed a valid lien against the property in question even if the basis of that lien is later proved fraudulent. Thus, when a person deceives another into filing, *and therefore executing*, a lien that is fraudulent with the intent to defraud or harm another, they have violated section 36.46(a)(1).[67]

Once again, this argument ultimately turns on the State's errant belief that county clerks "execute" liens when they accept them for recording and indexing. For the reasons discussed above, that argument fails.

Moreover, this argument is simply not supported by the text of the statute or the legislative history. If the Legislature wanted to criminalize the act of "causing or inducing a public servant to file or record *any* purported judgment or other document" that was fraudulent, it could have ended the sentence there. Instead,

---

[66] State's Br., p. 10 (emphasis original).

[67] State's Br., p. 11–12 (emphasis added).

the Legislature added additional sub-sub-sections to ensure that 36.42(a)(2) *only* applied to documents from non-existent judicial entities.[68] These limitations are confirmed by the legislative history, which makes no reference whatsoever to criminalizing *disputed* liens that do not arise out of fraudulent courts.[69]

In sum, the court of appeals judgment is consistent with both the plain text and the legislative history of subsections (a)(1) and (a)(2). These provisions were passed at different times, for entirely different purposes, and neither of them addresses the acts that Appellants allegedly committed in this case. Accordingly, because no "overlap" between the two is permitted, the court of appeals' judgment should be affirmed.

### C.    This Court places primary emphasis on the "statutory verb" when determining the criminal act at issue.

The State's suggestion that that "the focus should not be on the…verbs found in the subsections, but on the documents that are covered by the statute"[70] is contrary to this Court's own precedent, as well as the only authority that the State cites in support of its argument. In its 2005 opinion in *Ngo v. State*, this Court held that "the verb…is generally the criminal act on which all jurors must unanimously

---

[68] *See* Tex. Penal Code § 36.42(a)(2)(A), (B), (C).

[69] *See* State's Br., Appendix F.

[70] State's Br., p. 15.

agree."[71] To support this holding, it relied on the reasoning of the (aptly-named)

former Fifth Circuit Judge John Minor Wisdom:

> The unanimity rule ... requires jurors to be in substantial agreement as
> to just what a defendant *did* as a step preliminary to determining
> whether the defendant is guilty of the crime charged. Requiring the
> vote of twelve jurors to convict a defendant does little to insure that
> his right to a unanimous verdict is protected unless this prerequisite of
> jury consensus as to the defendant's *course of action* is also required.[72]

This Court reaffirmed its support for focusing on the "statutory verb" three years

later in *Huffman v. State*, this time adopting a rule previously offered by former

Judge Cochran in a concurring opinion:

> In sum, we must return to eighth-grade grammar to determine what
> elements the jury must unanimously find beyond a reasonable doubt.
> At a minimum, these are: the subject (the defendant); the main verb;
> and the direct object if the main verb requires a direct object (i.e., the
> offense is a result-oriented crime).... Generally, adverbial phrases,
> introduced by the preposition "by," describe the manner and means
> of committing the offense. They are not the gravamen of the offense,
> nor elements on which the jury must be unanimous.[73]

By asking this Court to de-emphasize its focus from the verb-plus-infinitive and

direct object clause ("causes another to sign or execute") in favor of the adverbial

phrase ("by deception") or the indirect object ("any document affecting property

---

[71] *Ngo v. State*. 175 S.W.3d 738, 745 n.24 (Tex. Crim. App. 2005).

[72] *Ngo*, 175 S.W.3d at 745 n.24 (citing *United States v. Gipson*, 553 F.2d 453, 457–58 (5th Cir. 1977) (emphasis added)).

[73] *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) (citing *Jefferson v. State,* 189 S.W.3d 305, 315–16 (Tex. Crim. App. 2006) (Cochran J., concurring)).

or service or pecuniary interest"), the State is actually arguing for a tacit reversal of this Court's recent and well-reasoned precedents.

This Court should decline this invitation, as even the State's own authority fails to support its argument. According to the State, the Third Court of Appeals concluded in its 2008 opinion in *State v. Wiesman* that "the gravamen of section 32.46 is the deception."[74] Although the State accurately excerpts this phrase from the opinion, the court's meaning is misconstrued when it is divorced from the context of the surrounding text:

> Section 32.46 prohibits the use of deception, broadly defined, to fraudulently induce another to sign or execute any document affecting the property, service, or pecuniary interest of any person. Although the gravamen of the offense is the deception, **the offense is not complete unless and until the person deceived signs or executes the document in question**.[75]

Contrary to the State's representation, therefore, the Third Court of Appeals did not conclude—or even suggest—that the purpose of section 32.46(a)(1) was "to protect the integrity of documentary transactions" in general.[76] Instead, the court held that this subsection was designed only to punish a specific type of deception

---

[74] State's Br., p. 14 (citing *State v. Wiesman*, 269 S.W.3d 769, 776 (Tex. App.—Austin 2008, no pet.)).

[75] *Wiesman*, 269 S.W.3d at 776 (emphasis added).

[76] State's Br., pp. 14–15.

that leads to the signing or execution of specific types of documents.

Finally, *Weisman* correctly notes that the direct object in section 32.46(a)(1) is the pronoun "another," and that its proper antecedent is "the person deceived."[77] According to the State's brief, the person (allegedly) deceived was Katheryn (Payne) Hall—the complaining witness—whose properly was encumbered by an (allegedly) fraudulent lien. But according to the State's indictment, it did not have to prove that Hall signed or executed any document, it had to prove that the *county clerk* signed or executed a document.[78] This disparity is fundamentally inconsistent with *Weisman*. Moreover, to reverse the court of appeals and affirm the underlying conviction, this Court would have to conclude that the Legislature passed section 32.46(a)(1) in 1973 to protect *county clerks*, which would clearly be an absurd result, given that they do not have a property, service, or pecuniary interest in the documents that they file and record. Not surprisingly, the State's discussion of the legislative history of section 32.46(a)(1) makes no reference to such an intent.

---

[77] *Wiesman*, 269 S.W.3d at 776. Although the direct object in section 32.46(a)(2) is "a public servant," the State concedes that this subsection is inapplicable to the facts of this case because

[78] C.R. 6–7.

In sum, this Court has expressly disagreed with the State's argument on this issue, and the only authority it offers actually reaffirms the correctness of the court of appeals' judgment. In the absence of any authority to suggest otherwise, this Court should affirm.

## II. The State's incorrectly suggests that the court of appeals' opinion has decriminalized the "fraudulent use of liens."

As the State's own legislative-history research reflects, when the Legislature added subsection (a)(2) to section 32.46 of the Penal Code, it also added section 32.49 (titled "Refusal To Execute Release Of Fraudulent Lien Or Claim") which provides:

    (a)    A person commits an offense if, with intent to defraud or harm another, the person:

        (1)    owns, holds, or is the beneficiary of a purported lien or claim asserted against real or personal property or an interest in real or personal property that is fraudulent, as described by Section 51.901(c), Government Code; and

        (2)    not later than the 21st day after the date of receipt of actual or written notice sent by either certified or registered mail, return receipt requested, to the person's last known address, or by telephonic document transfer to the recipient's current telecopier number, requesting the execution of a release of the fraudulent lien or claim, refuses to execute the release on the request of:

            (A)    the obligor or debtor; or

            (B)    any person who owns any interest in the real or personal property described in the document or instrument that is the basis for the lien or claim.

> **(b)** A person who fails to execute a release of the purported lien or claim within the period prescribed by Subsection (a)(2) is presumed to have had the intent to harm or defraud another.
>
> **(c)** *An offense under this section is a Class A misdemeanor.*[79]

Although Appellants were never charged with this offense, there is simply no dispute that this section was inexistence at the time of Appellants' indictment and that it remains good law today. Accordingly, the State's argument that an affirmance of the court of appeals' judgment would "lead to the absurd result that Appellees' fraudulent use of liens is not a crime"[80] is simply false.

According to the State, however, section 32.49 is insufficient on its face because its complaining witness failed to follow its requisite procedures:

> This case also would not fall under section 32.49…as there was no evidence that the victim followed the necessary steps under section 32.49(a)(2) by sending notice that she requested Appellees to release the liens. While if the victim had followed the procedures necessary in section 32.49 and there may have been a case against Appellees if they had not released the liens, Appellees were the ones who filed the fraudulent liens regardless of whether the victim asked for a release per the statute, and Appellees should be criminally responsible for their actions.[81]

In other words, because the State did not have the evidence it needed to obtain a conviction under existing law, this Court should legislate from the bench and

---

[79] State's Br., Appendix F, p. 2 (§ 4); Tex. Penal Code § 32.49 (emphasis added).

[80] State's Br., p. 16.

[81] State's Br., pp. 16–17.

retroactively graft new sections onto the Penal Code in order to ensure that Appellants can be punished. Not only has this Court consistently opposed such rank judicial activism,[82] an argument for the retroactive application of a non-existent statute raises obvious constitutional concerns.[83]

Indeed, this Court's precedents require sections 32.49 and 32.46 to be read *in pari material*, and therefore, it would violate Appellants' due-process rights if the State were to subject Appellants to a greater punishment under a broader statute when a narrower statute called for a more limited punishment. In its 1988 opinion in *Cheney v. State*—a case that the State actually cites in its brief in *support* of the proposition that specific statutes control over general[84]—this Court explained how statutes that impose different penalties for similar conduct should be construed:

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered to be *in pari materia*.
>
> * * *
>
> The purpose of this rule is to carry out the full legislative intent, by giving effect to all laws and provisions bearing on the same subject.

---

[82] *Ex parte Roemer*, 215 S.W.3d 887, 898 (Tex. Crim. App. 2007) ("established principles of statutory construction and separation of powers prevent this Court from "legislating from the bench" to correct a perceived inconsistency in a statute").

[83] *See* U.S. Const. art. I, § 9, cl.3; Tex. Const. art I, § 16.

[84] State's Br., p. 17.

The rule proceeds on the same supposition that several statutes relating to one subject are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions. Thus, it applies where one statute deals with a subject in comprehensive terms and another deals with a portion of the same subject in a more definite way. But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior to or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling.[85]

Consistent with this rule, therefore, this Court has long held that the State may not seek greater punishment under a broad statute when lesser punishment is proscribed under a more specific statute. For example, in its 1986 opinion in *Mills v. State*, this Court noted:

In the case in which the special statute provides for a lesser range of punishment than the general, obviously an "irreconcilable conflict" exists, and due process and due course of law dictate that an accused be prosecuted under the special provision, in keeping with presumed legislative intent. Accordingly, where range of punishment under what is perceived to be the more specifically defined offense is less than that for the broader, and especially where the convicting court would be deprived of subject matter jurisdiction in a prosecution under the specific provision, this Court has not hesitated to reverse convictions obtained under the broader provision.[86]

---

[85] *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (citing 53 Tex. Jur.2d, Statutes § 186 (1964), at 280). This doctrine has also has also been codified in section 311.026 of the Texas Government Code.

[86] *Mills v. State*, 722 S.W.2d 411, 414 (Tex. Crim. App. 1986) (and cases cited therein).

And more recently, this Court held in *Ex parte Smith* that "a defendant has a due process right to be prosecuted under a 'special' statute that is *in pari materia* with a broader statute when these statutes irreconcilably conflict."[87] Finally, in its 2008 opinion in *Azeez v. State*, this Court held that such a defect in the trial court's judgment could be raised at any time, including for the first time on appeal.[88]

The same result should follow here. The State prosecuted Appellants under the broader language of section 32.46(a)(1) notwithstanding the fact that the more specific provisions in section 32.49 addressed Appellants' alleged conduct. Under this Court's holdings in *Cheney*, *Mills*, *Smith*, *and Azeez,* therefore, Appellants should have been charged with a misdemeanor, not a felony offense. Accordingly, even if this Court were to conclude that the evidence *was* legally sufficient to sustain a conviction under section 32.46(a)(1), the trial court's judgment is void because a district court does not have jurisdiction over misdemeanor offenses that do not involve official misconduct.[89] Either way, however, the court of appeals judgment of acquittal must be affirmed.

---

[87] *Ex parte Smith*, 185 S.W.3d 887, 893 (Tex. Crim. App.2006).

[88] *Azeez v. State*, 248 S.W.3d 182, 194 (Tex. Crim. App. 2008). Here, Appellant raised this issue in his motion for new trial. C.R. 79–81. The trial court, however, never ruled on this motion and therefore, it was denied by operation of law. Tex. R. App. P. 21.8(c).

[89] Tex. Code Crim. Proc. art. 4.05.

## Conclusion and Prayer

The evidence at trial was legally insufficient to support Appellants' conviction because the State offered no evidence that the Denton County Clerk signed or executed any document. By seeking a reversal of the court of appeals' judgment, the State tacitly asks this Court to ignore (a) its evidence at trial, (b) the plain meaning of the verb "to execute;" (c) the statute's legislative history; (d) this Court's well-established rules on statutory construction; and (e) another plainly-applicable statute that already criminalizes exactly the same conduct that Appellants are alleged to have committed. Appellants respectfully submit that this Court should decline the State's invitation. Instead, it should affirm the judgment of the court of appeals, and grant Appellants all other relief in law and equity to which they have shown themselves to be justly entitled.

Respectfully submitted,

s/ Matthew J. Kita
_____
Matthew J. Kita
Texas Bar No. 24050883

P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863 (phone)
(214) 347-7221 (facsimile)
matt@mattkita.com

Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rule of Appellate Procedure 9.4(i) because it contains 6,233 words (excluding the parts of the brief exempted by this rule).

Signed this 24th day of April, 2015.

s/ Matthew J. Kita
MATTHEW J. KITA

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this brief was served on the following counsel via e-filing in accordance with Texas Rule of Appellate Procedure 9.5 and this Court's Local Rules on April 24, 2015:

*Counsel for Appellee:*

Lara Tomlin
Denton County District Attorney's Office
1450 East McKinney Avenue
Denton, Texas 76209

s/ Matthew J. Kita
MATTHEW J. KITA