**AFFIRM; and Opinion Filed January 16, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00333-CR

### ADRIAN CARDONA VELASQUEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F14-76518-M**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Fillmore

A jury convicted Adrian Cardona Velasquez of indecency with a child by exposure, and assessed punishment of ten years' imprisonment and a $10,000 fine. In accordance with the jury's recommendation, the trial court suspended the sentence of confinement, and placed Velasquez on community supervision for a period of ten years. Velasquez contends in six points of error: (1) the evidence was insufficient to prove the complainant was "present" when Velasquez exposed himself; (2) the evidence was insufficient to prove Velasquez acted with knowledge of the complainant's presence; (3) the trial court erred by failing to instruct the jury on the lesser-included offense of indecent exposure; (4) the trial court violated its duty to determine whether the jury could find certain extraneous offenses proven beyond a reasonable doubt; (5) the trial court abused its discretion by allowing the State to use evidence of extraneous offenses to prove character

conformity; and (6) the trial court abused its discretion by refusing to exclude evidence of extraneous offenses as unduly prejudicial. We affirm the trial court's judgment.

**Background**

On August 4, 2014, L.P. and her two daughters, ten-year old E.P. and one-year old S.P., were walking to a supermarket in Dallas, Texas, when a small, red, four-door vehicle pulled up next to them "very, very slowly, almost to a stopping point." The driver was the only passenger in the vehicle. E.P. was walking beside her mother, who was pushing S.P. in a stroller. E.P. testified the man "pull[ed]up" "[s]lowly close to us, where he was able to see my sister and me," and that she was able to see the driver's face and into the car.[1] L.P. testified she "saw the passenger's side window down and the man with his penis out." She observed he was holding his penis "with his hand," "touching himself," and "[m]oving it [his hand]." "[S]cared and shocked," L.P. immediately began screaming "911!" and the driver sped away. L.P. called 911 to report the incident.

At trial, L.P. testified she "was scared" and "call[ed] the cops because this happened in front of my kids." L.P. remembered the vehicle's license plate number by "repeating it to [her]self, and repeating it to [E.P.]" L.P. also "physically note[d]" the license plate number "in [her] phone." L.P. testified that when the man drove up next to her, she saw "[t]he side of the face and his hair, curly hair, maybe his shirt, plaid shirt," and identified him as "Hispanic" with "dark, curly hair." E.P. testified that she saw the man's face, then "looked away" "[b]ecause it scared [her] that he was pulling up slowly near [them]." E.P. expressed fear and concern for L.P. by "asking [L.P.], Mom what is wrong, you know, are you okay." L.P. testified that E.P.'s "facial expression" was "scared" and "shocked" when the man drove up next to them, exposed himself, and masturbated.

---

[1] At the time of trial, E.P. was eleven years old and in the sixth grade.

When the police arrived, L.P. told them "about the guy that pulled up next to me and what he did in front of my kids." On running the license plate number provided by L.P., the police identified Velasquez as the registered owner of the vehicle, a red 2003 Chevy Aveo. Dallas Police Detective Victor Lucas called Velasquez, who agreed to be interviewed at Dallas Police Headquarters. In his interview with Detective Lucas, Velasquez admitted he sometimes drove the red Chevy Aveo, along with several other vehicles. He initially denied exposing himself to L.P. and E.P., then transitioned to admitting the possibility someone may have seen him masturbating in his car.

On August 30, 2014, L.P. went to the Dallas Police Department for a line-up, and was shown six photographs by Detective Lucas, one of which was Velasquez's driver's license picture. She was unable to make an identification. L.P. was "not sure" if the man in one of the photographs was the suspect, but said "the first [photograph] looks like him at least ninety-five percent." Velasquez was not the man depicted in the first photograph. L.P. did not believe the men in the other photographs were the suspect. At trial, Detective Lucas concluded L.P. and E.P. had "focused on" Velasquez's "penis in his hand," and not his face.

At trial, the videotape of a forensic interview of E.P. conducted after the incident by Kim Skidmore at the Children's Advocacy Center was played for the jury. In the videotape, E.P. indicated she, her mother, and her sister were walking to the store when a man pulled up next to them and showed them his private part. She stated, "some man showed me, my mom, and my sister something I'm not supposed to see." E.P. explained she could see his "private," but did not want to talk about it. She told Skidmore she saw the man holding his private part with his hand, and the man looked "a little Mexican." E.P. drew a picture of the man with his private part sticking up. Detective Lucas testified he believed E.P.'s responses in the forensic interviews were her own, and did not feel the information provided by E.P. or L.P. was suggested to one by the other.

–3–

**Sufficiency of the Evidence**

In his first two points of error, Velasquez asserts the evidence was insufficient to support the conviction. In his first point of error, Velasquez argues we should interpret the term "present" in section 21.11(a)(2)(A) of the penal code to require the offense of indecency with a child by exposure to occur in a non-public place. Velasquez contends the evidence did not establish complainant was "present" when he exposed his genitals and masturbated, because the State failed to prove E.P. was in a non-public place. In his second point of error, Velasquez complains the evidence was insufficient to prove he acted with knowledge of E.P.'s presence.

*Standard of Review*

We review sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). We examine all the evidence in the light most favorable to the verdict, and, based on that evidence and reasonable inferences therefrom, determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016), *cert. denied*, 137 S.Ct. 1207 (2017). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Balderas*, 517 S.W.3d at 766. As the fact finder, the jury is entitled to judge the witnesses' credibility, and may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to and may not substitute our judgment for the jury's determinations of credibility. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (the

–4–

appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). The factfinder may make reasonable inferences from the evidence presented at trial in determining the defendant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007) ("Juries are permitted to make reasonable inferences from the evidence presented at trial"). When there is conflicting evidence, we presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

In our review, we consider both direct and circumstantial evidence, and all reasonable inferences that may be drawn from the evidence. *Hooper*, 214 S.W.3d at 9, 13. The standard of review is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Each fact need not point directly and independently to the defendant's guilt, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Hooper*, 214 S.W.3d at 13; *Wise*, 364 S.W.3d at 902–03 (Evidence is sufficient if the inferences necessary to establish guilt are "reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict."). Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 14–15.

*Applicable Law*

A person commits the offence of indecency with a child by exposure if, "with intent to arouse or gratify the sexual desire of any person," the accused exposes his anus or any part of his genitals, knowing a child younger than seventeen years of age and not his spouse is present. TEX.

PENAL CODE ANN. § 21.11(a)(2) (West 2011). Whether the person possessed the requisite intent to commit an offense is most often proven through circumstantial evidence. *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Intent is most often proven through the circumstantial evidence surrounding the crime.") (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992)). The jury may infer the requisite intent from the acts, words, and conduct of the accused. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *see also Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980).

"[T]he offense of indecency with a child by exposure is complete once the defendant unlawfully exposes himself in the required circumstances." *Harris v. State*, 359 S.W.3d 625, 631 (Tex. Crim. App. 2011). Exposure in a child's presence may occur without the child being aware of or seeing the exposed body part. *See Ex parte Amador*, 326 S.W.3d 202, 207 (Tex. Crim. App. 2010). "The child need only be 'present' for the offense to be effectuated; the child does not even have to be aware of the exposure." *Harris*, 359 S.W.3d at 631. "[T]he statute does not expressly require that the State prove that the child actually saw the accused's genitals. . . . Requiring the State to prove that the victim saw the accused's exposed genitals or understood the nature of the victimization would undermine the purpose of the statute and, in addition, afford less protection to certain children. . . ." *Uribe v. State*, 7 S.W.3d 294, 297 (Tex. App.—Austin 1999, pet ref'd) (upholding conviction for indecency with a child by exposure when the child did not see the defendant's exposed genitals). Section 21.11(a)(2) requires only that the accused knew a child was present, and exposed his genitals or anus with the intent of gratifying a person's sexual desire; and the child was within the protected age group and not married to the accused. *See id.* at 296–97; *see also* TEX. PENAL CODE ANN. § 21.11(a)(2).

*Presence of E.B.*

Velasquez's first argument, that the evidence was insufficient to prove E.B. was" present" when he exposed himself, raises an issue of statutory interpretation. Statutory interpretation is a question of law, which we review *de novo*. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009).

Section 21.11(a)(2) does not define the term "present." Velasquez argues we should look to the public lewdness statute, TEX. PENAL CODE ANN. § 21.07(a) (West 2016), and interpret "present" in section 21.11(a)(2) to require the indecent exposure to occur in a non-public place. He contends the State was required to "disprove that the street sidewalk, street, median, store parking lot, and store sidewalk" where he exposed his penis was a public place, and the State did not meet its burden. Therefore, Velasquez asks us to find the evidence was insufficient to show E.P. was "present" within the meaning of section 21.11(a).

Section 21.07(a) is inapposite to this case. An individual violates the public lewdness statute if the person "*knowingly* engages in any of the following [sexual] acts *in a public place*, or *if not in a public place, the person is reckless* about whether another is present who will be offended or alarmed . . . . " TEX. PENAL CODE ANN. § 21.07(a) (emphasis added). Section 21.07(a) explicitly distinguishes between lewd acts occurring in public places versus non-public places for the express purpose of defining the requisite mens rea. Section 21.11 makes no such distinction in the mens rea required for public versus non-public indecent exposures; nor does section 21.11 require the indecent exposure to occur in a particular place to constitute a violation. To constitute a violation of section 21.11(a), all that is required is the suspect "know[s] the child is present" when he exposes his anus or genitals, with the intent to arouse of gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11(a)(2)(A).

Words not defined in a statute are given their ordinary and common meaning. *See Avery v. State*, 359 S.W.3d 230, 237 (Tex. Crim. App. 2012). When construing a statute, we first look to the statute's literal text, and "we read words and phrases in context and construe them according to the rules of grammar and usage." *Id*. When a statute is unambiguous, we give effect to the plain meaning of the words unless doing so would lead to absurd results. *See Boykin v. State*, 818 S.W.2d 782, 785–86 n.4 (Tex. Crim. App. 1991). "We presume that the legislature used every work and phrase in a statute for a purpose." *Uribe*, 7 S.W.3d at 296 (citing *Polk v. State*, 676 S.W.2d 408, 410 (Tex. Crim. App. 1984)). "We also presume that if the legislature did not use certain words in a statute, it excluded those words for a reason." *Id.*; s*ee also Timmons v. State*, 952 S.W.2d 891, 892 (Tex. App.—Dallas 1997, no pet.). We may look to a dictionary to discern the meaning of a statutorily undefined word. *See Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012). "In consulting dictionaries for the meaning of a particular word, we look to the lexicographical alternatives that the Legislature most likely had in mind, taking into account the context provided by the phrase, subsection of the statute, and overall statutory scheme in which the word appears." *Id*.

Because the Texas Penal Code does not define "present" for purposes of section 21.11(a)(2)(A), we give the term its common and ordinary meaning, unless doing so would lead to an absurd result. *Hines v. State*, 906 S.W.2d 518, 520 (Tex. Crim. App. 1995) (citing *Boykin*, 818 S.W.2d at 785-86); *Avery*, 359 S.W.3d at 237. Merriam-Webster dictionary defines "present" as "being in view or at hand." https://www.merriam-webster.com/dictionary/present (last visited January 3, 2018). Applying this definition, the State was not required to prove that Velasquez's indecent exposure occurred in a non-public space as an element of the offense. Rather, the State needed to show only that E.P. was "in view or at hand" to prove E.P.'s presence. "The obvious intent of indecency laws is to protect children." *Uribe*, 7 S.W.3d at 297; *see also Ex parte Amador*,

326 S.W.3d at 208 ("In the case of indecency with a child . . . it is the society that is 'offended or alarmed' by the fact that its children should be subjected to such exposure. The law therefore criminalizes such exposure in the presence of a child whether or not the child itself might have been offended or alarmed"). Restricting violations of section 21.11(a) to indecent exposures in non-public places would undermine the purpose of the statute, and lead to an absurd result, affording protection only to children in private spaces and allowing victimization of children in public places. Section 21.11(a) contains no such restriction.

Velasquez's intent and knowledge may be inferred from his conduct and the circumstances surrounding his actions. *Turner*, 600 S.W.2d at 929; *Claycomb v. State*, 988 S.W.2d 922, 925 (Tex. App.—Texarkana 1999, pet. ref'd). L.P. testified she was walking to the grocery store with her two children when Velasquez, with the passenger window down, drove up next to them "very, very slowly, almost to a stopping point" with his penis in his hand, and masturbated. E.P. testified Velasquez pulled up next to them and saw E.P. and her little sister. E.P. further testified she was able to see the driver's face and into the car. In her forensic interview, E.P. stated, "some man showed me, my mom, and my sister something I'm not supposed to see," and said she saw the man holding his private part with his hand. Detective Lucas testified he believed E.P.'s responses in the forensic interviews were her own, and did not feel the information provided by E.P. or L.P. was suggested to one by the other.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could reasonably infer Velasquez, with intent to arouse and gratify his sexual desire, knew that E.P., a child younger than seventeen years of age, was "in view" or "at hand" when he slowly drove up next to E.P., L.P. and S.P. on a major roadway with the passenger window open, looked

–9–

at E.P., exposed his genitals, and masturbated while he watched them. We resolve Velasquez's first point of error against him.

*Knowledge*

In his second point of error, Velasquez contends the evidence was insufficient to prove he acted with knowledge of E.P.'s presence. Velasquez's intent and knowledge of E.P.'s presence may be inferred from his conduct and the circumstances surrounding the acts he engaged in. *Sholars*, 312 S.W.3d at 703 ("A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant"); *Conner*, 67 S.W.3d at 197 ("The jury may infer the requisite intent from the conduct of the defendant"). "From adequate testimony, . . . the jury [may be] justified in inferring and finding the requisite knowledge and intent elements of the offense even without evidence of appellant's calling attention to himself by direct word or deed . . . ." *Turner*, 600 S.W.2d at 930–31 (affirming appellant's conviction for indecency with a child by exposure under section 21.11(a)(2), and rejecting appellant's argument that, because he "neither called to, spoke to, waived (sic) at, made any motions or gestures [to the child] . . . which would call attention to himself," he did not violate section 21.11(a)(2)).

Given the surrounding circumstances and viewing the evidence and testimony presented at trial in the light most favorable to the verdict, we conclude a rational jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could reasonably infer Velasquez knew E.P. was present when he slowly drove up next to E.P., L.P. and S.P. with the passenger window open, looked at E.P., exposed his genitals, and masturbated. We resolve Velasquez's second point of error against him.

**Lesser-Included Offense**

In his third point of error, Velasquez contends the trial court erred by failing to submit a jury instruction on the lesser-included offense of indecent exposure. The State responds Velasquez

was not entitled to the instruction because there was no evidence showing that if Velasquez was guilty, he was guilty only of the lesser-included offense of indecent exposure.

In analyzing a jury-charge issue, we first determine if error exists. *See Almanza v. State*, 686 S.W.2d 157, 173–74 (Tex. Crim. App. 1985) (op. on reh'g); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If error is found, we consider whether an objection to the charge was made, and analyze the error for harm. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). When, as is the case here, error is properly preserved by a timely objection to the charge, reversal is required if the error caused "some harm" to the accused. *Almanza*, 686 S.W.2d at 171; *see also Barrios*, 283 S.W.3d at 350. In evaluating whether the defendant suffered some actual harm, we consider the entire jury charge, the evidence, counsel's arguments, and any other relevant information in the record. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 171.

We apply the two-pronged *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should have been given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012) (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007)). First, we determine whether the lesser offense is included within the proof necessary to establish the greater offense. *Id.* If it is, the second prong of the test requires us to determine whether some evidence in the record showed that if the defendant is guilty, he is guilty only of the lesser-included offense. *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006) (second step requires evaluation to determine whether some evidence exists that would permit jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *see also Cavazos*, 382 S.W.3d at 382, 385.

The second step is a fact issue based on the evidence presented at trial. *Cavazos*, 382 S.W.3d at 383. "A charge on a lesser included offense does not have to be submitted to the jury unless there is evidence raising the issue of whether the defendant could be guilty of only the lesser offense." *Briceno v. State*, 580 S.W.2d 842, 844 (Tex. Crim. App. 1979). The defendant must substantiate the requested lesser-included offense with at least some evidentiary support, *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996), that consists of "more than mere speculation." *Cavazos*, 382 S.W.3d at 385. It "requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* Although more than a scintilla of evidence may be sufficient to entitle a defendant to an instruction on a lesser-included offense, *Hall*, 225 S.W.3d at 536, the evidence must be sufficient to establish the lesser-included offense as a "valid, rational alternative" to the charged offense. *Cavazos*, 382 S.W.3d at 385 ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense.") (citing *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). We review a trial court's decision to submit or deny a lesser-included offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). A trial court abuses its discretion when its decision is arbitrary, without reference to guiding rules and principles, or so clearly wrong it lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g); *see also Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

As the State concedes, indecent exposure is a lesser-included offense of indecency with a child by exposure. *See Ex parte Amador*, 326 S.W.3d at 208. Therefore, we proceed to the second step, which is to determine whether some record evidence showed that if Velasquez is guilty, he

is guilty of only the lesser offense of indecent exposure. *See Cavazos*, 382 S.W.3d at 382, 385; *McKinney*, 207 S.W.3d at 370.

A person commits indecency with a child by exposure if, "with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person, with intent to arouse or gratify the sexual desire of any person, exposes the person's anus or any part of the person's genitals, knowing the child is present." TEX. PENAL CODE ANN. § 21.11(a)(2)(A). A person commits the lesser offense of indecent exposure if "he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a). Thus, "[t]he elements of these two offenses are identical except that indecency with a child requires the defendant to know that a child is present." *Briceno*, 580 S.W.2d at 844.

On appeal, Velasquez argues the trial court erred in failing to submit indecent exposure as a lesser-included offense because "the evidence would support a finding that Appellant did not consciously desire to expose himself to complainant"; "the evidence included that complainant was 'at the wall' of the cellphone store when the exposure transpired"; the "phone store was located more than 30 feet from the road where Appellant pulled up"; "Appellant sought attention exclusively from complainant's mother, and complainant's mother went over to Appellant's car"; "Appellant exposed his genitals only to complainant's mother"; and "Complainant testified that she did not see any exposure." However, the law does not require a child who is present to see the exposure, or Velasquez to consciously desire that a child see the exposure or "[call the child's] attention to himself by direct word or deed . . . ." *Turner*, 600 S.W.2d at 930–31; *see also Harris*, 359 S.W.3d at 631. It only requires that Velasquez knew E.P. was present when he exposed himself.

To be entitled to an instruction on indecent exposure, there must be some affirmative evidence from which a rational juror could infer that Velasquez did not know E.P. was present when, with his passenger window down, he slowly drove up next to L.P., E.P. and S.P., exposed his penis, and masturbated. Velasquez did not testify or offer any evidence at trial showing he did not know of E.P.'s presence. L.P. and E.P. testified that E.P. was with her mother when Velasquez slowly approached them in his car, exposed himself, and masturbated. E.P. testified she saw Velasquez's face, and "he was able to see my sister and me." The jury saw a videotape of E.P.'s forensic interview, where she stated, "some man showed me, my mom, and my sister something I'm not supposed to see," and said she saw the man holding his private part with his hand. Detective Lucas testified he believed E.P.'s responses in the forensic interviews were her own, and did not feel the information provided by E.P. or L.P. was suggested to one by the other.

The jury was entitled to believe the testimony of E.P., L.P., and Detective Lucas, and determine Velasquez knew E.P. was present from his conduct and the circumstances surrounding his acts. *Jackson*, 443 U.S. at 319; *see also Hooper*, 214 S.W.3d at 14–15. Since no evidence controverts the jury's inference of Velasquez's knowledge, there is no evidence that if Velasquez is guilty, he is guilty only of indecent exposure.[2] The evidence supports the jury's determination that Velasquez knew of E.P.'s presence, and indecent exposure was not a valid, rational alternative to the charged offense. We conclude the trial court did not abuse its discretion by denying Velasquez's request for a lesser-included offense instruction, and resolve Velasquez's third point of error against him.

---

[2] *See Joseph v. State*, No. 05-09-00818-CR, 2011 WL 9802, at *4–5 (Tex. App.—Dallas, Jan. 4, 2011, pet. ref'd) (not designated for publication) (concluding trial court did not err by refusing jury instruction on lesser-included offense of indecent exposure where defendant was convicted of indecency with a child by exposure, defendant did not testify or offer evidence in guilt phase, and witnesses testified children were present and defendant "could not have failed to see" them).

**Extraneous Offenses**

In his fourth, fifth, and sixth points of error, Velasquez claims the trial court erred by allowing Detective Lucas to testify about certain extraneous offenses. In his fourth point of error, Velasquez contends the trial court violated its duty to determine whether the jury could find the extraneous offenses proven beyond a reasonable doubt. In his fifth point of error, Velasquez argues the trial court abused its discretion by allowing the State to use evidence of extraneous offenses to prove character conformity. In his sixth point of error, Velasquez contends the trial court abused its discretion by refusing to exclude evidence of extraneous offenses as unduly prejudicial.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (admissibility of extraneous offense evidence). We will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343–44; *see also Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (op on reh'g) (quoting *Montgomery*, 810 S.W.2d at 391).

Velasquez contends the trial court erred by allowing the following testimony by Detective Lucas regarding his interview with Velasquez:

> Q: Did you begin the interview by speaking about – how did you transition from the cars that the defendant had or drove to this offense?
>
> A: I asked if he had, ah – anything in his background, ever been arrested before. And he explained to me that he had. I proceeded to speak with him about the – I guess those prior – those cases and then went on into my case.
>
> Q: Okay. What did the defendant say about this case?
>
> A: We were speaking about, like I said, the prior case, and the Dallas case, and I gave him – I asked him generally, you know, what makes you do this kind of stuff, why would you do this. And he said that he didn't know. Maybe it was something wrong in his head or maybe he was just horny basically, he basically said in horny. He basically said in Spanish, he said calentamiento, warm blooded or something.

–15–

Q: So he kind of talked generally about, Maybe there is something wrong in my head? What did you think when he said that?

A: I thought okay. This – you know, this is not normal, who does that.

Q: Okay. Did you talk to him specifically about the offense that occurred on South Hampton Road?

A: Yes.

Q: What was his initial reaction to – his initial statement about his involvement there?

A: He initially denied it. . . . He said, No, I don't know what you are talking about. I am not sure what that is.

Q: As the discussion progressed, did he back off of that statement? Did he change his statement in any way?

A: It changed from, I don't remember – from that, I don't remember I am not – that day, that time, that intersection, I just don't remember. . . .

Q: So what happened after, I don't remember that intersection, that time?

A: Like I said, he made those general – I asked the general question about, why you do this? And so revisit that. I said, look, you said there might be something wrong. You know, I said normal people don't do that, I don't just drive down the road and find a spot, masturbate or something like that. People just don't do that. I said, ah, but you know – I think I suggested, I said, well, could it, maybe – so your [sic] saying you don't remember. You don't remember being there, you don't that street, that day, that time, you just don't remember. Ah, could it be that maybe somebody, maybe you weren't actually trying to show it, I think that's how I worded it. Maybe you were just masturbating and somebody saw you. He looked at me, and said, You know what that maybe – yeah, it could be that.

Velasquez jointly argues points of error four, five, and six, and contends Detective Lucas's testimony that he spoke with Velasquez about "those prior cases" and "the Dallas case," constituted impermissible evidence of an extraneous offense. Velasquez further asserts that, when asked by the prosecutor about "this case," Detective Lucas's testimony that he asked Velasquez "generally, you know, what makes you do this kind of stuff . . ." constituted impermissible evidence of an extraneous offense.

–16–

To constitute an extraneous offense, evidence must show prior criminal conduct by the accused. *McKay v. State*, 707 S.W.2d 23, 31–32 (Tex. Crim. App. 1985). "If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established." *Id.* at 32; *see also Harris v. State*, 738 S.W.2d 207, 224 (Tex. Crim. App. 1987) (op. on reh'g) ("Initially, evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct") (citing *McKay*, 707 S.W.2d at 23).

Here, no extraneous offense evidence was admitted. Detective Lucas's vague references to "those prior cases" and "the Dallas case" did not show Velasquez was connected to any specific offense, or link Velasquez to specific criminal activity. Detective Lucas did not describe any extraneous conduct, much less specific acts, by Velasquez. While Detective Lucas testified that Velasquez stated he had been previously arrested, the prosecutor did not ask, and Detective Lucas did not offer, testimony on what Velasquez had been arrested for, or whether charges were filed against Velasquez.[3] Moreover, immediately after Detective Lucas referenced "those cases," he testified he "then went on [to ask Velasquez about] my case." Detective Lucas's testimony that he asked Velasquez, "what makes you do this kind of stuff" was in response to the prosecutor's question, "What did the defendant say about this case?" Because the complained-of testimony failed to show Velasquez was connected to specific extraneous criminal conduct, it was not inadmissible extraneous offense evidence. *McKay*, 707 S.W.2d at 32. We resolve Velasquez's fourth, fifth, and sixth points against him.

---

[3] This Court previously determined vague statements which do not connect the defendant to a specific offense or criminal conduct do not constitute inadmissible extraneous offense evidence. *See Williams*, 1997 WL 211483, at *2–3 (detective's trial testimony that "there were two other offenses" and other information that led him to include the defendant's photograph in a line-up was not evidence of extraneous offenses).

**Conclusion**

We resolve Velasquez's issues against him. Accordingly, we affirm the trial court's judgment.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

160333F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADRIAN CARDONA VELASQUEZ,
Appellant

No. 05-16-00333-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F14-76518-M.
Opinion delivered by Justice Fillmore,
Justices Bridges and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 16th day of January, 2018.